The question was, what estate did James Noyes take under the will, and upon this question the following opinion was now delivered by
Sedgwick, J.
In every question arising on the construction of a will, it is alike dictated by justice, common sense, and the rules of law, that the first inquiry shall be, What was the true intention of the testator? And if that can be satisfactorily discovered, the next is, Can such intention be carried into effect, consistently with the rules of law ? And if so, such must be the decision.
The question on which this case depends is, What estate did James take under the first devise to him ? If an estate tail, then are the demandants entitled to their judgment, otherwise not.
[ * 59 ] * This general question may make it of some importance to consider: —1. Does the devise give an estate for life to James, and a fee to his children, if he should have any, by way of executory devise, as was suggested by the Attorney-General in his argument ? 2. Did James and his brothers, by this devise, take an estate tail, with cross remainders either in fee or in tail ? 3. Did the three sons take estates in fee, respectively, determinable on the contingency of their dying without children, and on that contingency vesting in the survivor or survivors, by way of executory devise ? James, under the will, took either an estate for life, in tail, or in fee.
1. Did he take an estate for life ? The general rule of law laid down, and, as far as is recollected, without contradiction, is that, in a devise of lands to one without words of limitation, the devisee takes *61 m estate for life only, unless it can be found, from the whole of the will, taken together and applied to the subject-matter of the devise, that it was the intention of the testator to give a fee. But if, from the whole of the will, so taken together and applied to the subject-matter, it can be collected that the testator intended to give a fee, it ought to be so construed, in order to give effect to such intention. (1) And I do think that courts ought to make liberal constructions of wills, and not to restrain in the consideration of those circumstances which tend to enlarge from life estates to fees; for I am satisfied that the idea expressed by Lord Mansfield, in Loveacres vs. Blight, (2) is correct. Speaking of the rule above mentioned, and the cases wherein devises had been construed to give only estates for life, he says, “ I really believe almost every case determined by this rule, as applied to a devise of lands in a will, has defeated the real intention of the testator. For common people, and even others, who have some knowledge of the law, do not distinguish between a bequest of personalty, and a devise of land or real estate. But, as they know, when they give a man a horse, they give * it to him forever, so they think, if they give a house or [ * 60 ] land, it will continue to be the sole property of the person to whom they left it.” The same idea that great man repeated almost as frequently as the subject came before him.
It is obvious that the will, in this case, was written by an unskilful person. Technical accuracy and precision are not therefore to be expected. We are inquiring for the intention of the testator; and it is clear, from a view of the whole instrument, — the preamble, the provision which he makes for all his children, and the ultimate disposition which he makes, by the residuary clause, of any residue which might remain after the specific distribution, — that he intended a complete disposal of all the property he should leave behind. And I have no doubt that he intended that his sons should take an estate of inheritance. Whether that can be construed to be the legal intention, as respects the first devise to Jonas, it is not necessary now to determine. The question is not before the Court; but that it was the real intention, I entertain not the smallest doubt. The fee was certainly intended to vest in children or grandchildren. Whether any of the latter existed at the time the will was made, or not, we are ignorant. But, in either case, no motive is suggested why the testator should entertain a more favorable regard for his grandchildren, and make a better provision for them, than for his own *62 children. That Jonas was a favorite son, is evident by his being admitted to the executorship, and all the rest excluded. Yet if, by the first devise to him, he was intended to take a life estate only, his children are almost wholly excluded from the succession; they have no chance of benefit, but from the residuary devise, except as to the lands in Princeton and Mendon. They are even less regarded than the children of the daughters, and greatly distinguished from the children of the other sons — a distinction which it is im possible should have been intended by the testator. From this consideration alone, we might conclude, with a good degree of satisfaction, that an estate of inheritance, by virtue of the first devise to Jonas, was intended to be vested in him; and if so, there can be no doubt that as large an estate was intended to be vested in John, James, and William, by virtue of the devise to them [ * 61 J But there are * other circumstances of great weight to be considered. A ¡devise is given to the wife for life, determinable, indeed, on her marriage. He gives to her the improvement of the real estate. To the sons he gives the land itself; and even, in the devise to John, James, and William, this improvement is again mentioned as an exception during the continuance of the wife’s estate. The supposition does not, I think, partake of great refinement, that the testator, when he devised the thing itself, intended to give his whole estate in it; and, when he intended a term only, he thought he had given only a right to the temporary occupa tian, which he meant to express by the word “ improvement.” The devise to his daughter Mary Maynard, as well in the specific legacy as the residuary clause, shows that he looked forward to his grandchildren, as intended to be benefited by his will, and to confer that benefit on them as the representatives of his own children, and as taking in succession from them. The anxiety which the testator showed to provide for his family, by vesting the share and interest of him or them, who should die without children, in the survivor or survivors, tends to strengthen this construction. If there should be children, the estate was, by implication, to go to them; if not, to the survivor or survivors. This share and interest, which was to go to the devisee and his children, if he had any, was to vest in the survivor or survivors, if he had none. It then depended on the con tingency of dying with or without children, whether either of the „uree sons should have more than his equal proportion of the devised premises. A devise to one, and, if he die without issue, remainder over, is an estate tail, from the manifest intention of the testator; (3) so also a devise to one, and,if he die without children *63 remainder over, may be an estate tail. (4) Now, with us, all the children are heirs ; and as this is a devise to the three sons and their children, or in effect heirs, it could not be an estate for life only. It was, then, intended to give an estate of inheritance, either in tail or in fee.
2. Was an estate tail intended ? 1 think not.
* In deciding this question, an observation made by the [ * 62 ", counsel for the plaintiff in error is, in my opinion, of great weight — viz., that, in construing language, the customs, manners, habits, or laws, relative to the subject-matter of it, are to be taken into consideration. In England, lands conveyed to a man and his heirs generally descend to his eldest male issue. If to a man and the heirs of his body, they descend in the same manner. If lands here are conveyed in the same manner, in the former case they descend to all his children, and in the latter to his eldest male issue, (a) In England, if a devise be made to one and his heirs generally, or to the heirs of his body, and the devisee die, leaving an eldest son and several other children, the whole goes to such son. But here, in that case, the above distinction would take place: the fee simple would go to all the children, the fee tail to the eldest son. In this case, the children, if any, of the devisees, are to take; to them the estate is given by the will. Did the testator intend, by children, the eldest son ? It is impossible for me to believe that he did. And if by children he meant what, in common parlance, would be understood all the children, then he intended a fee simple, and not a fee tail. If, by the devise to the “ survivor or survivors,” he meant that he or they should take whenever there should be an indefinite failure of issue, and not till then, however distant that period might be, then he intended a fee tail; and if, by this expression, he contemplated events which were to take place in the life of the devisees, then he did not intend a fee tail. That this was the meaning of the testator is, in my opinion, clear from the will itself. The bequest of personal property, which immediately follows the devise to them, is in these words: “Also, my will is, that my husbandry tools and negroes shall be equally divided amongst and between my three sons, John, James, and William, last mentioned, to be possessed by the survivor or survivors, as above mentioned.” This shows that it was the intention of the testator that the right to the real and per *64 sonal estate should rest, by survivorship, upon the happening of the same contingency. No other reasonable construction can be given of the expression “ being possessed by the survivor or survivors, as above mentioned.” The survivors were to be thus “ pos- [ * 63 ] sessed : ” * how and when ? The devise answers the question; when “ any or either of them should die without children.” On the happening of that contingency, and whenever it do happen, the right accrues of being “ possessed ” alike of the real and personal estate. Did the testator intend that this right should accrue when there should be an indefinite failure of issue, and not till then?—an event which might not take place in a century; a period when neither the negroes nor the husbandry tools would be in existence. The supposition is- absurd. This view of the subject shows clearly that the event contemplated by the testator, which was to give a right by survivorship, was to happen within the lives of the immediate devisees ; and therefore it cannot be considered as an estate tail, where the estate continues until there is an indefinite failure of issue. We may then, I think, pretty confidently conclude that the testator intended,
3. That the three sons, John, James, and William, should take respectively an estate of fee simple, determinable on the contingency of their dying without issue, and on that contingency vesting in the survivor or survivors, by way of executory devise. Now, whether this intention can or cannot be carried into effect is not very material to be determined in this case, because the demandants’ right to recover depends on the devise being construed a fee tail, which, I think, it is shown it could not be. But I think the rules of law will recognize the devise as a fee simple, and, on that con struction, execute the plain intention of the testator. It is not necessary, to constitute it a fee simple, that it should be absolute. It may be a fee simple determinable, as where lands are given to a man and his heirs as long as another man shall have heirs of his body, (5) and the like. It may be a base fee, as where, in England, tenant in tail, by indenture enrolled, bargains and sells the land to another and his heirs, and afterwards levies a fine to the bargainee, the bargainee has a fee in the land, but it is only to endure as long as the tenant in tail has heirs of his body, and is therefore called base, as compared with the pure fee, which is in the cri [ * 64 j ginal donor, and * which has an absolute perpetuity belonging to it. (6) So also, before the statute de donis, an estate to a man and the heirs of his body was a fee simple *65 conditional. These are conveyances other than wills ; the vesting of estates in fee, by way of executory devise, will be more particularly attended to hereafter. It will not be useless to take notice of the attention which has been paid by courts to a liberal construction of wills, that the intention of the testator might be carried into effect.
In Loveacres vs. Blight & Ux., (7) Lord Mansfield, in delivering the opinion of the court, says, “ Wherever there are words, either general or particular, or clauses in a will, which the court can lay hold of, to enlarge the estate of a devisee, they will do so, to ejfec tuate the intention.” In Spalding vs. Spalding, (8) a devise, aftei the death of the testator’s wife, to J. S. and the heirs of his body in fee, and if J. S. should die in the life of his wife, that W. should be his heir: J. S. did die in the life of the testator’s wife, and yet, against the words of the will, it was determined that the estate should not go to TV., but to the heirs of J. S. A devise (9) to a son and his heirs, and if he die before 21 years of age, or without issue, then to another son : he did die before 21 years of age, yet it was adjudged that his issue should hold. In Lexford vs. Cheeke, (10) a devise to a wife for life, if she do not marry, but if she do marry, then with several limitations: she did not marry, and although the devise over, according to the expression, seemed to depend on the marriage of the wife, yet was it adjudged an estate tail. In Robinson vs. Robinson, (11) a devise to Launcelot Hickes, “ for and during the term of his natural life,” is construed an estate tail, “ to effectuate the manifest general intent of the testator.” In Evans, ex dimiss. Brooke, vs. Astley & Al., (12) a devise, after several limitations, to every son and sons of Charles Duckenfield which shall be begotten on the body of Sarah, his now wife: although it was agreed by the court that the words of the will made the sons ^oint-tenants, yet, because the construction must be agreeable * to the intention of the testator, and as, from a con- [ * 65 ] sideration of the whole will, it appeared impossible that should have been his intention, but that the sons should take in succession an estate tail, it was accordingly so adjudged. In New land vs. Shepherd, (13) Mr. Shepherd, after the devise of several parts of his real and personal estate to several persons, devises the interest and produce of the surplus of his real and personal estate to trustees, their heirs, executors, and administrators, in trust to pay and apply the produce and interest thereof for the maintenance and *66 benefit of such of his grandchildren as should be living at the time of his death, until his grandchildren should come to the age of 21 years, or be married ; and he went no farther, nor made any other disposition of his estate. It was, however, determined that this would pass the absolute right and property «of the real and personal estate to the grandchildren. Let this case be compared with the one under consideration. In White vs. Barber, (14) a devise to a child, with which the wife of the testator should be enceinte at the time of his decease, was construed, to effectuate his intention, to vest the estate in children born after making the will, and before the death of the testator. In Statham vs. Bell, (15) the testator, supposing his wife to be enceinte, made a devise to the child, if he should be a son, when he should attain the age of 21 years ; but if a daughter, then one moiety of his estate to his wife, and the other moiety to his two daughters, he then having one daughter, when they should attain their ages of 21 years, with survivorship between the daughters. If they both should die before 21, their moiety to go to the wife and' her heirs forever ; if she died, her share to go to.them. The wife proved not to have been enceinte. The testator died, and so did the daughter, without issue and under age. It was determined that the wife should take the whole estate. A devise (16) to give to his children, to dispose of (17) at will and. pleasure; to a wife, to dispose thereof upon herself and children, (18) give fees. [ *66 ] A devise to A, for life, and then *to his son, except A purchases land of the same value for his son, and then the devisee shall sell: A does not purchase; his son has a fee. (19) A devise to three daughters, and if one dies before the others, one to be heir to the other, gives a fee ; (20) a case differing • nothing in principle from the one under consideration. A devise to A, and, if he dies under age, to the heirs of the devisor (21) — so a devise to A, but if his father purchase land of like value, to another, A has a fee. (22) So the words “ whatsoever else I have in the world ” have been construed to give a fee. (23) It would be endless to state, in the most concise manner possible, all the cases which have been decided on the same general principle of justice, carrying into effect the meaning of the testator, and for this, rejecting some words, supplying others, transposing words and sentences, in some particulars contracting and in others enlarging ; — and all this that the right which a man has of deciding, according to his own will and pleasure, who shall enjoy, after his decease, the property *67 he may leave behind, may be carried into effect. Instances of tins kind are abundantly supplied by Viner, Comyns, Bacon, and by Gilbert and Powel on Devises. Let the general scope, and tendency, and reason, of those decisions be compared with, and applied to, the case under consideration. In this case, the will was drawn by a man of no professional knowledge. The estate is certainly intended to go to the children, by which, on the part of the demand-ants, it is contended that the testator did not mean children, but eldest son, if there was one; when, in all probability, neither the testator, nor the writer, knew there was any such course of descent. If there are no children, it-is to go to the survivor or survivors, together with husbandry tools and negroes. When was this event, as contemplated by the testator, to take place ? We are told, whenever there should be an indefinite failure of issue, however distant the period: whereas it is a thousand to one that the testator, so far from so intending, knew nothing of that artificial reasoning which gave rise to the expression indefinite failure of issue, and probably had never heard it.
*1 have already stated that it was the intention of the [ * 67 ] testator that the three sons, John, James, and William, should take, respectively, an estate of fee simple, determinable on the contingency of their dying without issue, and, on that contin gency, vesting in the survivor or survivors. This is an executory devise. Executory devises, as they respect estates of inheritance, are of two kinds. 1. A substitution of one fee for another which fails. 2. Of a fee to commence at a future time, without the support of a particular estate. This is of the former kind. Although the law will not recognize a remainder to take effect after the expiration of a fee, yet, by way of indulgence to a man’s last will and testament, conformably to the liberal intention of the statutes (24) of wills, and in favor of devisors, when otherwise the words of a will would be void, — it permits, under certain restrictions, a fee or other estate to be substituted as an alternative in the place of a fee before limited ; provided the substitution be to take place within a reasonable period of time. Devises of this nature are called executory, because the estates, thereby limited to take place, have no present existence, in consideration of law; but merely a capacity of existence, and being executed; taking effect when the contingency, upon which they are limited, occurs. I shall mention some cases, as illustrative of the general description which I have given of executory devises. In (he case of Marks vs. Marks, (25) a devise of lands to a man’s *68 wife, remainder to his second son in fee, provided that if D, his third son, should, within three months after the wife’s death, pay £500 to C, his executors, &.C., then the lands should go to D and his heirs: this is a good executory devise; and the possibility descended to the heirs of D, notwithstanding D died in the life of the wife. The famous case of Pells vs. Brown (26) essentially settled the principles on this subject. It has been called the magna charta, in relation to it. It has been cited almost as frequently as executory devises have come before the Court, and always with approbation ; and it goes the full length of deciding the present case. There, the testator devised to A, his second son, [ * 68 ] and his heirs forever, and if he should * die without issue, living B, his brother, then B to have those lands to him and his heirs forever: —it was adjudged that A took an estate in fee simple, and yet that the limitation to B in fee was good, as an ex-ecutory devise. Now, if, in the case under consideration, the testa tor meant, by the word children, what the word imports ; if he intended the provision for the children generally, then he intended it for the heirs of the devisees; then was it, in other xvords, a devise to the devisees and their heirs, a devise in fee. If he meant, by dying without children, truly a dying without children, and not an indefinite failure of issue, of which he knew nothing, and therefore could not mean; if, by survivors, he meant to comprehend none but the immediate devisees, then this case compares most exactly xvith the case of Pells vs. Brown. In Porter vs. Bradley & Al., (27) a devise of lands to A, his heirs and assigns forever, and if he die leaving no issue behind him, then over ; the limitation over was determined to be good, by way of executory devise. This compares in principle exactly with the case under consideration. In Wilkinson vs. South, (28) a bequest of a term of years to the testator’s son, S. Parker, and to the heirs of his body lawfully begotten, and to their heirs and assigns forever, but in default of such issue, then, after his decease, to go to the testator’s grandson, his heirs and assigns forever, the limitation over was held to be good, by way of executory devise. And, in deciding the case, the court went upon this principle, that, if the words “ leaving no issue ” shall, from the whole wih, be understood leaving no issue at the time of his death, then, a further limitation over will be good, by way of executory devise. In Roe vs. Jeffery and Others, (29) a devise to T. F. and his heirs forever, and in case he should depart this life and have no issue, then to E., and M., and S., or the survivor or survivors of them *69 share and share alike : it was determined that the limitation to E., M., and S., was a good executory devise. The chief justice, in delivering the opinion of the court, lays down the true principle; he says, “ The question in this and similar cases is, whether, from the whole context of the will, we can collect that, when an estate is given to A and * his heirs forever, but if he die [ * 69 ] without issue, then over, the testator meant dying without issue living at the death of the first taker.” And I think nothing is more certain than that the application of that principle is decisive of the present case; for nothing can be more clear than that by the “ dying without children,” in this will was meant the death of the first taker. I have entered thus fully into the consideration of the several questions which present themselves, out of respect to the former decision of the Court, and the very ingenious and able argument (30) of the counsel for the defendant in error. I con- *70 elude, after the most deliberate attention which I can give the sub ject, that the former judgment was erroneous, and ought to be reversed.
*71 * Sedgwick, J.,
then observed that the late Judge Strong [ * 70 ] had, before his death, declared his concurrence in the same opinionand that Sewall, J., had also authorized him to *72 [ * 71 ] say that * he agreed in the result. Thé chief justice, apprehending himself interested in the event of the [ *72 ] cause, declined giving any * opinion. Thatcher and Parker, justices, not having been present at the argument of the cause, gave no opinion.

Judgment reversed.
(31)

 Vide Vin. Abr. — Bacon, Woodeson, Comyns’s Dig., their proper heads. — Rowe vs. Blacket, 1 Cow 235. — Hogoin vs. Jackson, 299. — Loveacres vs. Blight & Ux. 352. — Denn vs. Gaskin, 2 Cowp. 657. —2 Black. Rep. 1045. — Right vs. Sidebotham, Doug 759.

 1 Cowp. 355.

 1 Vent 230. — Cro. Jac. 448, 695 — 1 P. Williams, 229.

 4 Burr. 2246.

 Vide Co. Lit. 10, a. 27, a.—Bacon, Ab. Gavelkind. (B) — Weeks vs. Carvel, Noy, 106. —14 Vin. Ab. 250. — Dyer, 179. — Rob. Gav. 94. — 2 Prest. Est. 383. — Aitrop vs. Aistrop, 2 Bl. R. 1228. — In gavelkind tenure all the sons succeed to the entail as heirs of entail; so in borough-English does the youngest son; and by analogy, here all the children ought to succeed.

 Powell on Devises, 230 — Plow. 557.

 Powell on Devises, 231. — Plow. 557. — Vide 1 Inst. 6. — 3 P. Will. 74, 75 — Ld. Ray. 1148.

 Cowp. 352.

 Cro. Car. 185.

 Cro. Eliz. 525. — Dyer, 33, a, in margin.

 3 Lev 125.

 1 Burr. 38.

 3 Burr. 1570.

 2 P. Will. 194 —See also King vs. Melling, 1 Vent. 230.

 5 Burr. 2703.

 Cowp. 40.

 6 Mod. 110.

 Ibid. 111.

 6 Mod. 4.

 Hob. 65. — Cro. Jac. 599.

 1 Rol. Abr. 833, l. 45.

 2 Sound. 388.

 Hob. 65.

 1 Salk 239. - 2 Ver 687.

 32 Henry 9, c. 1. — 34 and 35 Henry 8, c. 5.

 10 Mod. 419. — 1 Stra. 129, S. C.

 Cro. Jac. 590.

 3 Term R. 143.

 7 Term R. 555.

 7 Term R. 589.

 Having been obligingly favored with the following note of Mr. Parsons's argument for the original plaintiffs, it is, by permission, inserted here, as showing the probable ground taken by the Court in the former decision, which has now been re* - versed: —
The*plaintiffs rely upon the several propositions following, viz.: —
Prop. I. That a devise of certain lands to A, without using any words of limitation, conveys only a life estate to A, unless there are other words in the will, which show that the testator intended to convey a larger estate. Cases need not be cited to support this proposition; but see those in the margin, (a)
Prop. II. That there are no other words in this will, which can be applied to the devise to the three sons, John, James, and William, so as to show that the testator intended to give them a fee simple.
The plaintiffs are not apprized of more than two paragraphs in the will which-, when applied to the devise in question, can be urged with any color, as enlarging the estate devised to a fee simple.
1. The intention of the testator, recited in the preamble, of disposing of all his worldly estate.
2. The proviso annexed to the devise to his three sons, John, James, and William.
As to the preamble, the plaintiffs know of no case where it has been adjudged that a devise to A of certain lands was a devise in fee simple, merely from the effect of an intention declared, in the preamble, of disposing of all the testator’s worldly estate; but they apprehend that the contrary has been frequently adjudged, (b)
Such intention, declared in a preamble of a will, operates in cases where the whole estate is not clearly devised, and there are in the particular devises, or in a residuary devise, ambiguous words, which may be considered, either as descriptive of the estate intended to be given, or of the testator’s interest in such estate. In the present case, there is a devise of the residue of the testator’s real estate, which is an ambiguous word, and may mean, either the testator’s lands or his interest in those lands; but when connected with the declared intention of the testator to dispose of all his estate, will undoubtedly pass a fee in the residue to the residuary devisees, (c)
The testator in this will, then, devises his whole estate, and executes his declared *70 intention, without supposing that a fee simple passed by the devise to his three sons, John, James, and William.
2dly. As to the effect of the proviso annexed to the devise to the said three sons, it is contended by the plaintiffs that it operates to enlarge the estate devised to them, but not so as to pass a fee simple.
Prop. III. Tnat the effect of the proviso, “ Also, my will is, that, if either or any of my three last-named sons, John, James, and William, should die without children, the survivor or survivors to hold the interest or share of each or any of them dying without children, as aforesaid,” is to give the three sons estates in tail general.
The plaintiffs admit that the regular technical limitation of an estate tail is by the words heirs of the body ; but they say that in a will, where there are any words thaf sufficiently show that the intent of "the testator was to create an estate tail, such in tent shall prevail, notwithstanding any informality in the mode of expression. Thus
1st. A devise to A for life, and after his decease, to his issue, is an estate tail.(d)
2d. So a devise to A and his issue is an estate tail.(e)
3d. So a devise to A, and, if he die without issue, remainder over, is an estate tail. (f)
4th. So a devise to A and his heirs, and, if he die without issue, remainder over, is an estate tail.(g)
5th. So a devise to A and his heirs, an'd, if he die without heirs, remainder over, to one who is heir to A, is an estate tail.(h)
6th. So a devise to A and his children, he not having children at the time of the devise, is an estate tail.(i)
7th. Also, which is the present case, a devise to A, and, if he die without children, remainder over, is an estate tail.(k) Buller, J., says “ Children and issue, in their natural sense, have the same meaning; not so the word heirs.” Lord Chief Baron Gilbert says,(l) a devise to A, and if he die not having a son, adjudged an estate tail. A fortiori, if ne die without children.(m) A devise to A, and, if he die not having a son, then to remain to the heirs of the testator, adjudged an estate tail.(n) Testator devises all his lands, &c., to his wife E, and, if it should happen that his wife E should have n& son or daughter, by him begotteii on her body, and for want of such issue, remainder over, decreed that the wife, E, had an estate tail.(o) A devise of all the testator’s real estate in B to A M, during her life, and at her death to her children,. on condition that she or they pay £30 yearly to C, and in case of failure of children of A M, a devise over: adjudged that A M took an estate tail.
It will be very singular if the defendants should deny that children, in this will, is a word of limitation, tantamount to issue. For, as James left but one child, and not children,.had that child been now living, it could not have taken his father’s third part upon any other construction than mat contended for by the plaintiffs, and the devise over would have taken effect, as the event of dying zoithout children has in fact happened.
Prop. IV. Where lands are devised to A, and if he die zoithout issue or without *71 leaving issue, then a devise over, the construction of law is, whenever there shall le a failure of issue, the devise over shall take effect. But if personal estate is so devised, then the construction of law is, that upon J.l's dying without leaving issue at his death, the devise over shall not take effect.(p)
If the defendants should contend that, in this case, James had a fee, and that the survivors would take by way of executory devise, if James had left no child at his death, as in the case of Pells vs. Brown, (q) it is answered that, in that case of Pells vs. Brown, an estate in fee simple was expressly limited to Thomas, and the devise over was not on his dying without issue generally, but on his dying without issue in the lifetime of William. This construction would be repugnant to the proposition last laid down and established,(r) to the case of Chadock and Cowley, (s) and to the following proposition.
Prop. V. Words in a will shall not be construed to give an estate by executory devise, but where the devisee cannot take any other way. (t)
It may be added that, admitting the words dying without children, equipollent to dying without issue, the case of King vs. Rumball (u) will decide the present case in favor of the plaintiffs.
Prop. VI. That the remainders expectant, on the" estates tail devised to the three sons, John, James, and William, were devised to the survivors and survivor in tail.
That these remainders were devised over to the survivors and survivor, provided the three sons took estates tail, there can be no doubt; but it may be questioned what estate the survivors have in those remainders.
Now, it is immaterial, in this action, whether they took for life, in tail, or in fee; for, in either case, the plaintiffs will have judgment. However, the plaintiffs conceive that the devise over is a devise in tail; or, in other words, that the survivors take the same estate, in the remainder, that the three sons had in the lands; because the will provides that the survivors shall hold the interest or share of him who should first die without issue.
The case of Pettywood vs. Cook, (w) was a devise of three houses to three children and their Aeirs-severally; and if any of them died without issue, then the survivors should enjoy totam ilium partem equally divided between them. It was adjudged that the devise over was for life only; because totam illam partem meant all the house, and not all the estate which the party dying had in the house. It may well be doubted whether this case is law ; and in the new edition of Bac. Abr. (x) this case is cited, and a quere subjoined, why the survivors did not take an estate tail. But the case at bar is very different; here the testator uses the words interest or share, which must necessarily mean the whole interest which the son, dying without issue, had in the lands devised to him.
Prop. VII. That the remainders devised to the survivors and survivor are vested, and not contingent remainders. The determination of this question is not necessary* for the decision of the cause; for if these remainders are contingent, the contingency has happened
The only reason why these remainders can be supposed to be contingent, is the un certainty of the persons who wilVbe the survivors; but such reason is insufficient. To *72 make a remainder contingent, it must be limited upon an event which, in contemplation of law, may never happen, or at least not happen until after the determination of the particular estate.(y)
Now, the law contemplates as certain the determination of every estate tail; and also that, of two or more persons, there will be survivors, and a longest liver.(z)
The plaintiffs conclude with mentioning one obvious principle of law : That nothing which happens after the death of the testator can vary the construction of the will, or the lights of the parties claiming under it.(j)

а) Doug. 763, Right, Lessee of Mitchell & Ux. vs. Sidebotham & Al.— Cowp. 238, Bowes vs. Blacket.— Ibid. 355, Loveacres vs. Blight & Ux.— Ibid. 306, Hogan vs. Jackson.

 Douglass, 759, Right, &c. vs. Sidebotham & Al.— Cowp. 352, Loveacres vs. Blight & Ux.— Ibid. 657, Den, Lessee of Gaskin, vs. Gaskin.—3 Wills. 414, Frogmorton. I essee of Wright, vs. Wright & Al.—2 W. Blacks. 889, S. C.

 Cowp. 299, Hogan, Lessee of Wallis, vs. Jackson.

 1 Vent. 214, 225.-2 Lev. 58.-2 Ld. Raym. 1440.

 Gilb. Law of Dev. 33.— Comyns’s Rep. 372.—2 Ld. Raym. 1440.—4 Term R. 82.

 Robinson’s case, cited 1 Vent. 230.—Cro. Jac. 448.—1 P. Will. 229.—1 Vesey, 24—1 P. Will. 685.

 Cro. Jac. 695.—Comyns’s Rep. 539.—3 Wils. 244.

 Cowp. 234.—3 Term R. 143.—Cases Temp. Talbot, 1, 2.—Comyns’s R. 82.—Nottingham vs. Jennings.—1 P. Will. 23, S. C.—1 Ld. Raym. 568, S. C.—Cro. Jac. 415.

 1 Vent. 231.—Moor. 397.—6 Co. 17.—Wyld's case.—Doug. 431, 321.—2 W. Blacks. 1083.

 3 Term Rep. 493, Doe, Lessee of Cumberbach & Al., vs. Perryn.

 Law of Dev. 39.

 1 Vent. 231, where Hale, C. J., cites Byfield’s case.

 1 Tr. Atk. 432, Wyld vs. Lewis.

 Doug. 431, Hodges vs. Middleton & Al.

 1 P. Will. 667, Chapman vs. Forth. — 6 Bro. Parl. Cas. 309, Keiley & Al. vs. Fowler.—Cowp. 410, Den, Lessee of Gearing, vs. Shenton.—2 Ver. 616, Southby vs. Stonehouse.—Com. Rep. 373, Walter vs. Drew.

 Cro. Jac. 590.

 Vide, also, 1 East, R. 259, Wood & Ux. vs. Baron.

 Cro. Jac. 695.

 Com. Rep. 373, Walter vs. Drew & Al.— Goodtitle, Lessee of Winckles, vs. Billington & Al., 2 Ver. 616.—Southby vs. Stonehouse, 2 Sound. 388.—1 East, 263.

 Cro. Jac. 448.

 Cro. Eliz. 52.

 Vol. iv. p. 259.

 Quere, and vide Parkman vs. Bowdoin, Cir. Court U. S. Dist. Mass., May term, 1833, and the very learned opinion of Mr. Justice Story, delivered in that case; and Jones vs. Davis, 4 Barn. & Adolph. 43, and the other books and cases cited in these cases.

 Fearne, cont. rem. 3, &c.

 Fearne, 369, 370, 371, and the cases there cited.

 1 Vez. 153, Bagshaw vs. Spencer.—Doug. 494, Doe, Lessee of Fonnereau, vs. Fonnereau, note [1].