Shaw C. J.
afterwards drew up the opinion of the Court. All the questions arising in the present case depend upon the construction of the eleventh clause in the will of Asa Perry, though other clauses are resorted to for the purpose of illustration and argument. By that clause he provides substantially as follows, viz. “ I give to my several grandchildren hereafter named, to wit,” &c. enumerating nine grandsons and nine granddaughters, “ all the remainder of my real and personal estate to be equally divided between them.” He then authorizes a sale by the executors, of all his real and personal estate, and directs “ the proceeds of such sales, after paying my just debts, funeral charges and legacies before mentioned, to he equally divided between my several grand *516 children named in this eleventh section : provided however, and it is my intention, that if any of my grandsons should die before they arrive to the age of twenty-one years, to be equally divided among the surviving ones : provided also, that if any of my granddaughters should die before they arrive to the age of eighteen years, to be equally divided among the surviving ones.”
Both clauses in this proviso, are manifestly elliptical, and the words cs the share of the one so dying,” or “ then the whole residue ” to be equally divided among the surviving ones, or some equivalent words, are manifestly wanting. But the intent is so obvious, that there can be no hesitation in supplying these words from the context, and without them the sentence would be wholly void of meaning.
1. The first question discussed is, whether this was a vested legacy, payable presently, to the minors as well as the adults without waiting to see whether the grandsons and granddaughters would arrive respectively at ,the ages of twenty-one and eighteen ; and therefore, whether the payment of the distributive share to the guardian of a minor, who died before arriving at the age of twenty-one, was a good payment and • discharged the executors from the claim of the survivors.
We think it was not. Such a construction would render the provisoes, directing the disposition of the shares in the event of any of the legatees dying under age, utterly nugatory and void ; contrary to the rule, that every clause and provision of a will shall be carried into effect, if it can be done consistently with the rules of law.
If this was a contingent legacy, then it is clear that it nevei vested, and the payment was made by the executors in their own wrong and without any authority. But it is not necessary to decide whether it was a contingent or a vested legacy ; because, if it was vested, it was defeasible upon a condition subsequent, that is, in the event of the legatee dying under age.
In regard to real estate, it was held, that under a devise in fee to J. M. when he attains the age of twenty-one, but in case he dies before twenty-one, then to his brother, when he attains twenty-one, J. M. the devisee takes an immediate vested interest liable to be divested upon his dying undei *517 twenty-one. Doe v. Moore, 14 East, 601 ; .Bromfield v. Crowder, 4 Bos. & Pull. 313 ; Richardson v. Noyes, 2 Mass. R. 56.
In the case of Bell v. Phyn, 7 Ves. 453, it was held, that where a bequest was made to three children, share and share alike, but in the case of the death of any one without being married or having children, then the share to the survivors or survivor, one being married and having children, her share became vested.
It would perhaps be a little more accurate to say in this case, that the legacy was vested, but determinable upon a condition ; that on the happening of those events which rendered it absolute and indefeasible, the legacy was payable. But in that case the prayer of the bill was, that as to the shares of those who were under age and unmarried, and therefore whose shares were defeasible, they should be secured, and the interest paid to the legatees respectively, with liberty to apply for the principal, when they should respectively marry and have children, or die without being married and having children, that is, upon the happening of one of the events which would defeat the legacy, or render it absolute. This part of the bill was not opposed, and seems to have passed as of course.
That a legacy payable at a future time, and not till after the death of another person, is nevertheless vested, was decided in Shattuck v. Stedman, 2 Pick. 468. That such a legacy may be defeasible, and determinable upon a condition properly expressed in the will, seems to be very clear.
From these views it appears to be immaterial whether a legacy be technically considered as vested or contingent, in determining whether the legacy was rightfully paid over by the executors, to the legatees, before attaining their full age.
It is urged, that the testator must have intended that the legatees should receive the interest or income from their shares, towards their education and support; which they could not do if the legacy were contingent.
This argument would certainly have weight, if the question were whether the legacy is vested or contingent, and if the testator had expressed an intent or expectation that the grand *518 children were to have interest or income from their shares. But here, as already stated, that question does not determine the one under consideration. Besides, there is no intention expressed that they shall have interest. If they are entitled to interest, it is an inference or conclusion of law arising from the relative situations of the testator and legatee, and the presumed intent of the testator to make a provision for one de pendent upon him for support. This rule, in reference to vested legacies, applies to a legacy from a parent to a child, oi to one standing in the same relation. But this rule, by which interest is allowed on a vested legacy when interest is not given in terms, can have no tendency to determine whether the legacy was vested or contingent, absolute or defeasible. In some cases, it is important to determine whether a legacy payable at a future and distant day, draws interest, either in the mean time or at the end of the term, as it essentially affects the amount of the gift. Dawes v. Swan, 4 Mass. R. 208. But this is immaterial in the present case, because it being a residue, and to be equally divided, if no interest is allowed qua interest, it is added to the principal, and forms part of the residue, and so is to be divided among all who are entitled to that residue.
Is there then any difficulty in giving effect to that provision in the will, which directs, that in case of the death of one, before attaining full age, “ his share,” or “ the share which would otherwise have come to him,” or “ the whole residue,” (for in effect these are all equivalent expressions,) shall be divided among the survivors ? We can perceive none. But in order to give it effect, it is necessarily implied, that the respective shares must remain in the hands of the executors till the contingency happens upon which they are to make such division. No person but the executors are competent to make such division of the residue.
But it is contended, that the effect of such a construction would be to convert the executors into trustees, require them to invest money on interest, and take upon themselves duties not belonging to the office of an executor, and thereby greatly increase their own responsibility and that of their sureties.
Whatever may have heretofore been thought upon this sub *519 ject, it is now fully settled by the late case of Hall v. Cushing, 9 Pick. 395, that an executor as such, is bound, if such be the direction of the will, to invest money on interest, to pay over the income as directed, to distribute the principal upon arrival at age, or the happening of any other event, and generally to conform to the directions of the will. It follows as a necessary consequence, that if the executor acts with good faith and reasonable circumspection, and a loss happens, such loss must fall upon the fund and not upon the executor.
It had been previously held, that a direction to support the testator’s father, was a direction which the executor, as such, was bound to obey, and a duty appertaining to the office, which would devolve upon an administrator cum testamento annexo. Such being his duty, it is a necessary implication, that he was authorized and bound to retain a sufficient amount of the assets of the estate to constitute a fund which would yield the necessary income. Any payment over or distribution, therefore, which would not leave such necessary fund, by the executor, would be a payment in his own wrong. Harwell v. Jacobs, 4 Mass. R. 634.
It has also been held, that upon the bequest of the interest of a sum of money to one for life, and at his decease the principal over, the executor as such was bound to execute this provision of the will. This involves the same power and duty to reserve a fund, to invest it, to collect and pay over the interest, and upon the contingency happening, to pay over the principal to the party entitled. Saunderson v. Stearns, 6 Mass. R. 37.
Nor does this construction involve the surety in any responsibility beyond the plain and literal obligation of his bond. The condition is, that the executor shall administer the estate according to the will, or according to law, which is the same thing, the will being by law the guide which an executor is bound to follow.[1]
2. Another objection made by the defendants, to the plaintiff’s recovery, is, that the plaintiff is estopped by the decree *520 of the judge of probate, on the settlement of the probate accounts of the executors, in which payments made to Calvin Carter, as the guardian of James Carter, were charged and allowed, of which settlement all persons interested had notice ; and they rely on the following cases ; Dublin v. Chadbourn, 16 Mass. R. 433 ; Homer v. Fish, 1 Pick. 435 ; Laughton v. Atkins, 1 Pick. 535 ; Rice v. Smith, 14 Mass. R. 431.
All those were cases, where the subject matter was obviously within the jurisdiction of the courts deciding them. The first and third were questions on the probate of wills ; a subject not only clearly within the jurisdiction of a court of probate, but one of which in this state it is held, that that court has peculiar and exclusive jurisdiction. The last case above cited was also within the jurisdiction of the probate court, to accept and confirm a partition among heirs ; but the decree was not binding and conclusive on those who had no notice.
But the question to whom and at what time, a legacy or distributive portion under a will, is to be paid by an executor, is one of which the judge of probate has no jurisdiction. Any decree directing the executor to pay or not to pay a legacy to any particular person, or at what time a legacy should be paid, whether made upon or without notice, would be extrajudicial, and would afford the executor no justification. It is difficult to conceive how a subsequent ratification or allowance of a payment already made, can be of any greater force or effect. It would in this respect be similar to a decree directing payment of a debt when the estate is solvent, and as such a mere nullity. Dawes v. Head, 3 Pick. 142.[1]
Notice therefore in such case makes no difference ; it cannot give jurisdiction. The notice was to all persons to appear, to attend to the settlement of the executors’ probate accounts. The construction contended for on the other side, would ren der it necessary for all legatees, even those whose legacies are payable at a future day, to attend upon such notice, to see that their legacies are not paid over to other persons.
The object of such accounting by the executor, befcie uie judge, is to show that he has paid according to his charges ; *521 and upon producing proof of the fact of payment, such charge is allowed. But whether such payment is rightful, is a question for which the executor himself stands responsible. To hold that an allowance of a payment in account, under such circumstances, would bar a legatee whose legacy is not yet payable, would be pressing the doctrine of res judicata beyond all reasonable limits.
As to a waiver of his claim on the part of the plaintiff, we think there are not facts enough to support it. The doctrine of waiver is a most reasonable one. And where a person, especially in the discharge of some office or duty, does an act which he supposes to be correct, and those interested, knowing the facts, assent to and affirm the act, the first principles of justice require that they should be bound by it. But here the only fact stated is, that the plaintiff was present at the probate court when these accounts were allowed. This undoubtedly was quite sufficient to conclude him as to all judicial acts, done within the scope of the jurisdiction of the court. But it does not appear that the plaintiff saw' the accounts or knew any of the facts, or by any act or declaration assented to them ; nor is there any ground to believe that he knew of his legal rights and assented to waive them. Independently therefore of its efficacy as a judicial proceeding, there is nothing in the decree of the probate court allowing the settlement of the executors’ accounts, or any act of the plaintiff in relation to it, upon which to found the conclusion that he has waived any legal right against the executors.
3. Another question is, in .the event that has happened, namely, the death of James Carter, one of the grandsons, under age, whether his share is to be divided among the surviving eight grandsons, or among them, together with another grandson, not mentioned in the residuary clause, or among the seventeen surviving grandchildren, named in that clause, including the nine females.
We think it quite clear from the will, that the share of James Carter goes to the eight surviving grandsons mentioned in the residuary clause.
After directing that the whole residue shall be divided among the eighteen grandchildren mentioned in the eleventh *522 clause, the testator directs, that “ if any of my grandsons should die &c. to be equally divided among the surviving ones.” Here the term ones refers to grandsons. That .t was those grandsons enumerated, and not the one who is nefore provided for in the will, is manifest from this, that the purpose of the provision was, not to introduce a new object of bounty, but to make the distribution among those to whom the residue was already given. Besides, the word ones has for its antece dent the word grandsons, immediately preceding ; but these are grandsons, whose shares were to go over, in case of their dying before attaining twenty-one, and this could not apply to the one provided for in another part of the will, because another destination is given to the real and personal estate devised to him, in case of his dying before twenty-one.
Nor is there any ground upon which the claim of the granddaughters can be sustained. The words are plain ; there is hardly room for construction. The clauses are distinct; if either of the grandsons die, then to the surviving ones ; if either of the granddaughters, then to the surviving ones It would have been very easy, if the testator so intended, to say that in case of either of the grandchildren dying, sons before twenty-one, and daughters before eighteen, respectively, it should be divided among the surviving grandchildren.

Defendants defaulted.

 See Dorr v. Wainwright, 13 Pick. 331; Towne v. Ammidown 20 Pick. 540

 Hancock v. Hubbard, 19 Pick. 173.