CHARLES M. WEAD, Respondent, *v.* MELVIN L. GRAY, ADMINISTRATOR, ET AL., Appellants.

### April 6, 1880.

1. Where a will provides that the devisee shall hold the property devised to to her sole and separate use, with power of disposition during her lifetime, that portion remaining undisposed of at her death to go to another person named in the will, this limitation over is good as an executory devise.

2. Where W. owns notes secured by deed of trust executed by S., and both S. and W. devise their property to R., there is no merger of the mortgage in the fee because of the intervening estate of W.'s administrator.

APPEAL from the St. Louis Circuit Court.

*Reversed and remanded.*

M. L. GRAY, for the appellants: The will of C. Wead creates a life-estate in R. Smith, with a power of disposal. — *Smith* v. *Bell*, 6 Pet. 68; *Chiles* v. *Bartleson*, 21 Mo. 344; *Farrar* v. *Christy*, 24 Mo. 453; *Harbison* v. *Swan*, 58 Mo. 147, 400; *Bryant* v. *Christian*, 58 Mo. 98; *Thompson* v. *Craig*, 64 Mo. 312; *Peake* v. *Jamison*, 6 Mo. App. 590. But this power does not include the power to will.— *Terry* v. *Wiggins*, 47 N. Y. 512. A limitation over by devise is good. — *McRee's Administrator* v. *Means*, 34 Ala. 372; *Clarke* v. *Terry*, 34 Conn. 176; *Sale* v. *Crutchfield*, 8 Bush, 648; *Brightman* v. *Brightman*, 100 Mass. 238; *Nicholson* v. *Bettle*, 57 Pa. St. 384; *Eaton* v. *Shaw*, 18 N. H. 320; *Trustees* v. *Kellogg*, 16 N. Y. 86; *Daniel* v. *Thompson*, 14 B. Mon. 632. There was not a merger. — 19 Mo. 404; 2 Washb. on Real Prop. 565, sect. 3.

F. J. McMASTER, for the appellants: A limitation over in a devise, with power of disposal, is good as an executory devise. — *Porter* v. *Bradley*, 3 Term Rep. 143; *Anderson* v. *Jackson*, 16 Johns. 383; *Rubey* v. *Barnett*, 12 Mo. 3; *Thompson* v. *Craig*, 64 Mo. 312; *Harbison* v. *Swan*, 58 Mo. 147. There was no merger of the interests in Mrs. Smith. — *Sherman* v. *Abbott*, 18 Pick. 448; 10 Vt. 293;

*Van Nest* v. *Latson*, 19 Barb. 604; *Waugh* v. *Riley*, 8 Metc. 290; *Knowles* v. *Lawton*, 18 Ga. 476; 2 Washb. on Real Prop. 182; *Leakey* v. *Maupin*, 10 Mo. 369.

W. B. HOMER and LEVI DAVIS, for the respondent: The two notes and deeds of trust held by Mrs. Wead were satisfied, released, and merged when they came to Mrs. Smith's hands. — *Atkinson* v. *Angert*, 46 Mo. 518. Mrs. Smith became the absolute owner of all of Mrs. Wead's property, including the notes referred to, under the will of Mrs. Wead. — *Rubey* v. *Barnett*, 12 Mo. 1; *Gregory* v. *Cowgill*, 19 Mo. 416; *Green* v. *Sutton*, 50 Mo. 186; *Reinders* v. *Kuppleman*, 68 Mo. 482; *Kimball* v. *Sullivan*, 113 Mass. 345. There being no life-estate created in Mrs. Smith, the provisions in Mrs. Wead's will in reference to the Missionary Society and Ann S. Beach are inoperative. — *Green* v. *Sutton*, 50 Mo. 186; *Ramsdell* v. *Ramsdell*, 21 Me. 288; *Hale* v. *March*, 100 Mass. 468. Mrs. Smith exercised her right of disposal by will. — *Hagel* v. *Hagan*, 47 Mo. 281; *Kimball* v. *Sullivan*, 113 Mass. 345.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case alleges that Spencer Smith died in June, 1870, having by will devised all his property to Rachel, his wife. At the time of his death he owned in fee twelve acres of land near Kirkwood, which were encumbered by two deeds of trust executed by him. One of these deeds was to secure a note for $1,000, dated July, 1861, made to the order of McLane; the other deed was to secure a note for $2,482, dated October, 1866, made to the order of defendant Gray. These notes were acquired by Charlotte Wead, who died owning and holding them in 1874.

The last will of Charlotte Wead is dated February 13, 1855, was proved on August 3, 1874, and is as follows:

" I give and bequeath to my only child, Rachel E. Smith, wife of Spencer Smith, all my property, real, personal, and

mixed, and all moneys and rights of action of every kind which may belong to me, or to which I may be in any way entitled at my decease, wishing my said daughter to have, use, and dispose of the same absolutely, in any way that may seem to her best, and for her own sole and separate use and benefit, and entirely free and clear and exclusive of any and all right, interference, or control of her husband, the said Spencer Smith; it being the intention and meaning of this, my last will and testament, that my said daughter, Rachel E. Smith, shall have and dispose of all my said property in her own right as absolute owner, and as though she were a *feme sole,* and that the same, and its proceeds and increase, if not disposed of and expended by her in her lifetime, shall descend at her death to her children, and exclusive of her said husband; but if the said Rachel E. should die leaving no children nor their descendants, and without having disposed of the said property, it is then my will that, out of what may remain undisposed of by her, the sum of $200 shall be paid to the Domestic Missionary Society of the Protestant Episcopal Church in the United States of America, and that the remainder of what may be left undisposed of by my said daughter at her death shall be put at interest, on good security, and the interest thereof annually shall be paid to my niece, Ann S. Beach, during her natural life, for her own separate and exclusive benefit, and at her death the remainder shall be paid to the above named Domestic Missionary Society, to be applied to the use of said society."

Defendant Gray administered upon the estate of Charlotte Wead, and holds three notes and deeds of trust as administrator; and defendant the Missionary Society claims the devise to it under the will.   Rachel Smith survived Charlotte Wead.   She died in January, 1875, and left a will dated October, 1874, proved in February, 1875, in the following words : —

" I, Rachel E. Smith, of Kirkwood, St. Louis County,

Missouri, do make, publish, and declare the following to be my last will and testament : I desire all my just debts to be paid, including the encumbrances on my residence property at Kirkwood, placed there by my late husband, Spencer Smith. I make the following bequests : To Mrs. Ann S. Lear I give my watch and five hundred dollars. To Reginald Heber Lear, son of Ann S. Lear, I give for his name five hundred dollars, to be paid him upon his arriving at the age of twenty-one years. All the rest of my property, real, personal, and mixed, I give and bequeath to Charles Minor Wead, the son of D. D. Wead, now of Sheldon, Vermont, whom I hereby adopt as my son and heir, for I love him as such, and believe him to be fully worthy of that love. In the event that my estate shall not be sufficient, after the payment of debts, fully to satisfy the bequests to Ann S. Lear and Reginald Heber Lear, I desire and direct in such case that the above bequests to Ann S. Lear and Reginald Heber Lear be paid *pro rata* so far as the property will go. I name and appoint my friend Melvin L. Gray, of St. Louis, executor of my last will.''

Rachel Smith died possessed of the real estate described in the deeds of trust. Ann S. Beach, named in Mrs. Wead's will, is the Ann S. Lear named in Mrs. Smith's will, and is one of defendants. Plaintiff is the Charles M. Wead named in Mrs. Smith's will. Reginald H. Lear, the other legatee in that will, is also made a defendent. More than two years have passed since notice of administration on the estates of Mrs. Wead and Mrs. Smith. No claims have been presented against either estate, and the personalty of the Smith estate is more than sufficient to pay the legacies to Ann S. Lear and Reginald Lear. At the time of Rachel Smith's death, and when her will was made, the real estate in question, which is the same named in her will as '' my residence property in Kirkwood,'' was encumbered by two other deeds of trust made by her husband during his lifetime. In those two deeds of trust Mrs. Wead was never interested.

These are the substantial allegations of the petition. Plaintiff further states that he claims that, by virtue of Charlotte Wead's will, this real estate was released from the encumbrances of the first two deeds of trust, and that the notes described ceased to be claims against the estate of Spencer Smith, or against any property of Rachel Smith, and that plaintiff is entitled to the realty discharged of these liens; that Gray, however, as administrator of Charlotte Wead, claims the notes, and the Missionary Society and Ann S. Lear claim them as legatees of Mrs. Wead. The prayer of the petition is that Gray be required to deliver up the notes, and that the deeds of trust be decreed satisfied.

Gray, in his answer, says that claims to the amount of several hundred dollars are allowed against the estate of Rachel Smith, and that the personalty of that estate is insufficient to pay either these claims or the legacies; that, after her husband's death, Mrs. Smith subdivided the tracts into lots, of which she sold a portion to various parties. He avers that the true meaning of Mrs. Wead's will is, that if Mrs. Smith did not dispose of the property mentioned in the will to her own use, and left no children or descendants, it should pass to the Missionary Society and Ann S. Lear, and that Mrs. Smith's will directs the payment of the encumbrances for the purpose of carrying out the will of Mrs. Wead; that Ann S. Lear was Mrs. Wead's niece, brought up by her, and the first object of her care, whilst plaintiff is a stranger to her blood.

The Missionary Society and Ann S. Lear filed similar answers. Plaintiff demurred to these answers. The demurrers were sustained, and defendants declining to further plead, the decree was made in accordance with the prayer of the petition (plaintiff having first dismissed as to Reginald S. Lear): that Gray and the trustees enter satisfaction of record of the two deeds of trust, securing the notes to McLane and to Gray, owned by Mrs. Wead at the date of her death, and that the notes be delivered to plaintiff, and finds that the notes are fully paid.

It is contended by respondent that the provisions in Mrs. Wead's will in regard to the Missionary Society and Mrs. Lear are inoperative, because, it is said, no life-estate was created in Mrs. Smith. The absolute power of disposition given to her amounts, it is said, to an absolute gift of the property. Our duty, however, is to discover from the words of Mrs. Wead's will what she really meant. We are not helped in this matter by rules laid down in cases in which deeds are under consideration as to the words necessary to create a life-estate, and that a life-estate will not be assumed unless there are words of express limitation. Mrs. Smith was married, and it is very clear that her mother desired that she should have absolute control over the property bequeathed to her, so far as this : that her husband was not to interfere with it. It is also clear that if Mrs. Smith did not dispose of the property during her lifetime, what remained undisposed of was to go to the Missionary Society and Mrs. Lear. If Mrs. Smith had not disposed of this property during her lifetime, and it were necessary, for the purpose of giving effect to the provisions of Mrs. Wead's will, to hold that Mrs. Smith had merely a life-estate with a power, this construction ought to be placed upon the will, notwithstanding the words giving it to her for her own use and benefit and disposal. *Smith* v. *Bell*, 6 Pet. 74 ; *Peake* v. *Jamison*, 6 Mo. App. 590. But, under our statute (Wag. Stats. 1351, sect. 51), where a remainder in land or chattels is limited by deed or will to take effect on the death of any person without heirs or without issue, the words are to be construed to mean heirs or issue living at the death of the person named as ancestor. In wills, where the words would otherwise be void, an estate may be substituted as an alternative in the place of a fee before limited ; and we see no difficulty in holding that the limitation over to Ann S. Lear and the Missionary Society was good as an executory devise. *Anderson* v. *Jackson*, 16 Johns. 384 ; *Richardson* v. *Noyes*, 2 Mass. 56. The testator meant what she said when she

provided that if Mrs. Smith died leaving no children nor their descendants, — that is, none living at the time of her death, — and without having disposed of the property, it should go to the persons she named. Her meaning in this respect is plain enough, and should be carried out and not frustrated by the courts.

Had Mrs. Smith the power of disposal of this property by will? If there is here a doubt, it is one that we need not resolve, because it seems clear that she did not execute any such power. There is no clear manifestation in her will of an intent to execute it; and there is no reference whatever to the power, or to the property which was the subject of it. *Owen* v. *Switzer*, 51 Mo. 329; 4 Kent's Comm. 334; *Blagge* v. *Miles*, 1 Story, 426.

There was no merger of the mortgages in the fee held by Mrs. Smith. If she had only a life-estate, there was no merger. But, whatever interest she took, there was no merger, because of the intervening estate of the administrator of Mrs. Wead. Mrs. Smith never had possession of these two notes, and never had a right to possess them. They went rightly to Gray, as administrator of Mrs. Wead. It could not be known until after two years of administration that they would not be needed to pay debts. At the time Mrs. Smith made her will, she knew, of course, the provisions of her mother's will, which had then been proved for two months; she knew also that Gray, as administrator, held the notes; and, so far from manifesting any intention that the mortgages should merge, she expressly provides in her will that they shall be paid before any of her legacies take effect. Respondent contends that, in speaking of the encumbrances placed by her husband upon her Kirkwood property, Mrs. Smith means, not all the encumbrances, but only two of them, to the exclusion of the two in question here. We can only know what she means by what she plainly says. There is nothing in the will or, in the circumstances from which we can gather any intention other than

that which she plainly expresses.   We think that she meant that the encumbrances, including the notes held by Gray, and which she must have known Gray held, should be paid. Her mother had always kept the notes, and kept the debt against the property alive.   That she did not destroy the notes on her death-bed may be some indication of a purpose by mother and daughter in regard to them inconsistent with the theory of respondent.   But we give no importance to this.   The daughter, in her will, included these encumbrances, of the existence of which she knew when she directed the encumbrances placed by her husband upon the Kirkwood property to be paid.

We are therefore of opinion that the decree directing these mortgages to be satisfied and the notes to be delivered to plaintiff is not warranted by anything contained in the wills under construction.   The judgment is reversed and the cause remanded.   Judge HAYDEN concurs ; Judge LEWIS is absent.