Whitehead, J.
The plaintiff's counsel insist that Maria Wardell is entitled to recover upon the ground, that the homestead farm devised to her father Charles Wardell, was limited to him in fee tail. That the entail was executed in her the second devisee in tail, and that consequently the conveyance by her father is void, as to her.
The defendant on the contrary, contends that he is the lawful *8 owner of the premises. That Charles under the will of his father, took a fee simple in the lands devised to him, liable however to be defeated upon his dying without issue then living. That having left issue, his estate became absolute, and that the defendant claiming under him by purchase can hold.
The difficulty lies in the construction to be given to the clause in the will, devising over to his surviving sons, the shares of such of them as should die without issue.
Under this limitation over, did Charles take'an estate tail, or can it be sustained as an executory devise ? The devise over being in the event of his dying without issue, the question is, whether the testator meant a definite, or an indefinite failure of issue. That is to say, did he mean that the premises should go to his surviving sons, in case of Charles’ death without leaving lawful issue living at the time of his death; or, when the issue or descendants of Charles should become extinct, whenever it should happen, sooner or later. If the former, then according to the adjudged cases, Charles took a fee, subject however to be defeated in the event of his death without issue alive. If the latter, he took an estate tail, as the contingency would be too remote to render it an executory devise. The intention of the testator, so far as can be gathered from the whole will must be our guide.
The primary devise of the premises to Charles was a fee under our statute, although no words of inheritance are used. Elm. Dig. 595; Den v. Snitcher and others, 2 Green 52. But at common law, independent of the statute, Charles took a fee simple under the devise to him. When there are no words of limitation added to a devise, an estate for life only is given, unless it can be found from the whole of the will taken together and applied to the subject matter of the devise, that the testator’s intention was to give a fee. If upon the whole of the will, it can be collected, that the testator meant to give a fee, it will be so construed in order to give effect to such intention. Roe v. Blackett, Cowper Rep. 235. From the introductory clause in the will, it is manifest the testator designed to dispose of all his estate. ITis language is, “ as touching such worldly estate wherewith it hath pleased God to bless me with, I give demise and dispose of the same in the following manner and form.” He did not mean to *9 die intestate as to any part of his estate. He gives specific parts to his several children, and there being no residuary clause in the will, he supposed he had disposed of all. In Frogmorton v. Holyday, 3 Burrows, 1618, these circumstances were considered by Lord Mansfield as plenary evidence of the testator’s intention to give a fee, although no words of limitation were added to the devise. See also 6 Cruise Dig. 250; 2 Term. R. 658; 5 Term. R. 562.
Again, the limitation in this case shows a clear intention to give a fee. The devise over to his surviving sons, is only in the event of the death of any, without issue. He did not intend the estate should descend. If it can be proved that the limitation over, was upon a definite failure of issue, then at common law, under the devise to Charles, he took a fee. Frogmorton v. Holyday, 3 Burrow, 1618; Toovey v. Basset, 10 East, 460. In the last case, the court say, “ the context shows that the devise over upon a dying without leaving issue, must be confined to the time of the death of the preceding taker,” and adjudge that the first devisees took a fee although no words of perpetuity were annexed. To the same effect is Richardson v. Noyes, 2d Mass. R. 56; Lippet v. Hopkins, 1 Gallison R. 455.
Did the testator intend by the cross limitation over, to defeat the fee simple, or reduce the interest of the devisee to a fee tail ? or in other words, did he intend to give to Charles a fee simple defeasible only in the event of his death without issue living at the time of his death, or did he intend to create an estate tail ? This will depend upon the construction we give to the limitation clause.
The words, “ dying without issue,” have acquired a technical meaning when applied to real estate, directly contrary to the plain grammatical sense of the words, which is simply, a failure of issue at the death of the person, whose issue if living, would take. But when applied to real estate they import an indefinite failure of issue; that is, not a failure at the death of the person, but the total extinction of his family; the deaths of all his descendants to the remotest generation. Courts have uniformly given to them this construction, when there are no expressions in the will controlling the legal meaning of the words, or pointing to a definite, rather than an indefinite failure of issue. This has *10 been so long the settled rule of construction, that it would endanger titles to real estate to call it in question. It was established centuries ago in England, under the influence of her institutions, when her parliament and judges favored estates tail as important in family settlements, and to the maintenance of the wealth of her nobility. It may be, that this was originally the popular sense of the words. But although this is the adjudged meaning of the phrase, yet courts both in England and in this country, have felt themselves called upon to depart from the general rule, whenever from the context, or any additional expression in the will, or difference in phraseology, it could be fairly inferred the testator intended to limit the failure of issue to the death of the first devisee. Roe v. Jeffery, 7 Term. R. 595; Moffat’s Exrs. v. Strong, 10 Johns. R. 13. In the last case, Kent, Ch. J. who delivered the opinion of the Court says, “ it ought to be observed, that courts have shown a disposition and leaning towards giving effect if possible, to these testamentary limitations, and have laid hold of any words that would admit of a construction to take the case out of the general rule, so as to give effect to the executory devise. The words leaving issue have, in many cases been deemed sufficient to change the operation of the will, and to show that the limitation was meant to be confined to issue living at the death of the first taker and so valid as an executory bequest. The words no issue behind him, and the words, in default of issue, then, after his decease to B. have been also considered as of decisive weight in support of this construction.”
The defendant's counsel- insist that the limitation over in this case, to survivors, on a failure of issue, means a definite failure of issue, and gives to the first devisee a fee simple, defeasible upon the contingency of his death without issue then living. And in this I think they are abundantly sustained upon principle and authority. That the testator intended a failure of issue living at thé time of the death of Charles, I have not a doubt. He meant something by the devise over to the surviving sons. He meant to confer upon them a benefit in a'certain contingency, and that contingency was, the death of any of his sons without issue living at the time of his death. For if a son died leaving issue, they would take by implication. Now it is idle to suppose that he intended a benefit to the surviving sons, after an indefinite *11 failure of issue, that is to say, after the posterity of a deceased son should become totally extinct, however distant the time might be. The expression surviving sons in this connexion, presupposes the death of some other of his sons, and fixes the‘period, when, if ever, they as survivors, were to be benefitted by the devise over. It was upon the death of such without issue then living, and not at a future period. This is the only grammatical construction to be given to the sentence.
In adopting this construction, and thus giving effect to the clear intention of the testator, we do not conflict with any settled principle of law, as the event must happen, and the devise over vest, in the life or lives of persons then in being. 4 Kent. Com. 267.
But the authorities are abundant, that the word survivors, or words of a similar import when used in connexion with the words “ dying without issue,” take the case out of the general rule, and give to the first devisee a fee simple, determinable by his death without issue then living. Pells v. Brown, Cro. James 590; Porter v. Bradley and others, 3 Term. R. 143 ; Roe v. Jeffery and others, 7 Term. R. 590. In the last case, the devise was to T. F. and his heirs forever, and in case he should depart this life and leave no issue, then to E. M. and S. or the survivor or survivors of. them, share and share alike; the devise to E. M. and S. was adjudged a good executory devise. Lord Kenyon in delivering the opinion of the Court says, “ the question in this and similar cases is, whether from the whole context of the will we can collect that, when an estate is given to A. and his heirs forever, but if he die without issue, then over, the testator meant dying without issue living at the death of the first taker.” He remarks upon the case of Pell v. Brown, that it has never been questioned or shaken, but had been adverted to as an authority in every subsequent case respecting executory devises. The court in that case had no doubt, but that the testator meant that the dying without issue was confined to a failure of issue at the death of the first taker, upon the ground principally, that the persons to whom it was given over, were then in existence.
In the case of Fosdick v. Cornell, 1 Johns. R. 439, the devise over was as follows, “ further my mind and will is, that if any of my said sons William, Jacob, Thomas and John or my daugh *12 ter Mary shall happen to die without heirs male of their own bodies, that then the lands shall return to the survivors to be equally divided between them.” Upon the construction of the will, the Court was of opinion, that the testator meant to provide, that in case “ any of the devisees named in the clause in question, should die without leaving mule issue at the time of his death, his portion should be divided among the survivors.” It was accordingly held, that the words did not create an estate tail for the reason that the limitation over was to the surviving devisees.
In Jackson v. Blanshan, 3 Johns. R. 292, Kent, Ch. J. who delivered the opinion of the Court, remarked, that the case could not be distinguished in principle, from the case of Porter v. Bradly and of Roe v. Jeffery, in which Lord Kenyon supported in a very forcible manner, the construction established in those cases. In Moffat’s executors v. Strong, 10 Johns. R. 12, Kent, Ch. J. delivered the opinion of the Court upon the same question. He again examines the leading authorities and establishes the same construction. “The term survivors (say the Court) will be found to rescue the limitation from the operation of the general principle, and to bring it within the reach of other cases which have adjudged that expression to be the cause of a different construction ; and for the reason, that it could not have been intended that the survivor was to take, only after an indefinite failure of issue, as that event might not happen until long after the death of all the survivors.”
Again, in Jackson v. Staats, 11 Johns. R. 337, the same question arose, and Judge Spencer, who delivered the opinion of the Court, says “ I believe none of us ever doubted the correctness of the decision in Fosdich v. Cornell.
The case of Anderson v. Jackson, 16 Johns. R. 382, turned upon the construction of the will of Medcef Eden, in which, after devising to his two sons Joseph and Medcef, portions of his estate, he adds, “ it is my will, that if either of my said sons should depart this life without lawful issue, his share or part shall go to the survivor.”
After the death of the testator, Joseph took possession of the premises devised to him. The same were afterwards sold by the sheriff, by virtue of an execution against Joseph, a deed ex *13 ecuted to the purchaser, by whotn they were conveyed to the plaintiff in error, who entered and took possession. Joseph Eden afterwards died without lawful issue, and the ejectment was prosecuted by Medcef Eden who claimed the premises as executory devisee under the will of his father. The Supreme Court upon the authority of the above mentioned cases, decided that he was entitled to recover, and the judgment was afterwards affirmed in the court of Errors. The then Chancellor, formerly Chief Justice Kent, as a member of the court of Errors, delivered a long and elaborate opinion against the construction he had contended for, and had been eminently instrumental in settling while Chief Justice. HiS opinion was, that the words used in the will of the testator created an estate tail. That they meant an indefinite failure of issue, and consequently that the devise over was not good as an executory devise. The Chancellor says, “ the contrary doctrine was mistakingly, and upon a very imperfect examination of the subject, declared by the Supremo Court in Fosdick v. Cornell.” If he meant, that the counsel in that cause examined the subject imperfectly, it appears to me he has done them great injustice. They were among the leading men at the bar of that state. It was the first time the question came distinctly before the court, and the report of the case shows a great deal of research on their part, and a most careful and thorough investigation of the subject. The Chancellor says, “ the cases of Porter v. Bradly, and of Roe v. Jeffery, were the blind guides that misled them.” The counsel for the defendant in the case of Fosdick v. Cornell, called the attention of the court particularly to the principles advanced by Lord Kenyon in Porter v. Bradly, and charged, that they were innovations upon ancient rules : notwithstanding which, the Supreme Court in that and subsequent cases, running through a period of several years, uniformly spoke in terms of high commendation of the reasoning of his Lordship in that case. The court of Errors however, by affirming the judgment of the Supreme Court, adhered to the rule of construction declared by Lord Kenyon, and afterwards by the Supreme Court of the state of New York, and which appears to me to be the sound, common sense rule, as carrying out the intention of the testator.
For the same rule of construction, see also, Sion v. Bentis, 20 *14 Johns. R. 483; Wilkes v. Lyon, 2d Cowen 333; Jackson v. Thompson, 6 Cowen 181; Jackson v. Crissman, 4 Wend. 277; Richardson v. Noyes, 2d Mass. Rep. 56.
But we are not without authority for this construction in this state. In Den v. Schenck, 3 Halst. Rep. 29, the devise was, chat if any of the testator’s children should happen to die without any issue alive, that such share or dividend should be divided by the survivors of them. The court ruled that the first devisee took a fee simple, subject to be defeated on the happening of two contingent events; first, that he should die without issue at his death ; second, that his sisters should survive him. Ford, Justice, who delivered the opinion of the Court, cites with approbation the cases of Porter v. Bradly, and of Roe v. Jeffery, which Chancellor Kent so pointedly condemns, as the blind guides that misled the judges of the Supreme Court of New York. The counsel for the plaintiff in this case contended that the first devisee took only an estate tail, on the ground that the words “ shall happen to die without issue alive,” meant an indefinite failure of issue. This construction was resisted by the adverse counsel, by the use made by the testator of the word survivors, as meaning a definite and not an indefinite failure of issue.
Judge Ford upon this branch of the argument remarks, “If one child die without issue living or surviving the other two, is like Thomas dying without issue living William, in the case of Pells v. Brown ; the cases cannot be distinguished from one another; and it could not be doubted but the testator meant a failure of issue at the death of the child for the single reason (if there was no other) that the limitations over is to the survivors for their lives. The force of this reason has governed in almost every case, when a limitation to survivors alone has ever occurred.”
To the same effect is the opinion of Chief Justice Horn blower upon the devise in the case of Den v. Combs, 3 Harrison 27. “ By the word survivor, it is manifest that the testator contemplated a person who should be in being, at the time of the death of the devisee, that should first die. He could not have supposed that either of the brothers, would survive an indefinite failure of issue of the other; an event that might not happen in an hundred years or more.”
*15 There are decisions both in the English and American courts, declaring a different doctrine. But it appears to me, that the judges in those cases have not sufficiently regarded the intention of the testator, but have suffered it to be defeated by an undue respect for ancient artificial distinctions, and what they conceived to be an unbending rule of law.
The case of Den v. Moore and Dayton, in Coxe Rep. 346, relied upon by the plaintiff’s counsel as sustaining their construction of the will in this case, is loosely reported. The case was submitted to the court without argument, and I find no reference to it by this court in any subsequent ease. Besides the doctrine there held, was virtually overruled by the decision in Den v. Sehenek.
The plaintiff’s counsel sought to draw an argument in favor of their construction of the will from the nature of the estate devised to the testator’s son Samuel. The devise to him, is special and may be considered an estate tail. It is limited to him during his life, with special powers as to renting, and upon his death, it was to descend to his heirs. The plaintiff’s counsel insist that this devise, taken in connection with the general limitation clause over to his surviving sons, is plenary evidence, that the testator intended the same kind of an estate to his other sons. I cannot perceive the force of this argument. It appears to me if the testator intended that his other sons should take an estate tail, he would have so devised it to them, and not left it to be raised by implication. If any inference is to be drawn from the devise to Samuel, affecting the devises to his other sons, it is that he intended they should take different estates, as the devises to them are differently drawn. Besides, it is very questionable from the whole will taken together, whether the testator intended to embrace the devise to Samuel in the general cross limitation over.
In my opinion, Charles the father of the lessor, under the devise to him, took a fee simple, subject however to be defeated, in the event of his death without issue then living. That as he died leaving issue alive, his estate became absolute, and the defendant claiming under him by purchase, is entitled to the premises.
*16 Hornblower, C. J.
The testator in this case, devises certain lands to his son Samuel strictly for life : adding that after his death the lands shall “ descend ” to his heirs : but if Samuel shall have no heirs, then to be equally divided between the testator’s sons Henry and Charles. He next gives to his sons Henry, Charles and Solomon, by separate and distinct clauses in his will, certain other portions of real estate, in severalty, but without annexing any words of perpetuity. To his son Solomon, he superadds a legacy of two hundred dollars, payable in one year after his, (the testator’s) decease, if Solomon shall be twenty-one years of age; otherwise the money to be put at use for the benefit of other legatees.
The testator then proceeds to make provision for his daughters, in the manner hereinafter stated: after which he annexes the limitation on which this controversy arises. The first question is, whether the testator meant to include Samuel in this limitation. It is not material to this cause to settle that question. If it was, I should be inclined to think, he did not. The testator had already, distinctly and as it appears to me, definitely indicated his particular, his general, and his ultimate intention, in relation to the lands mentioned in the devise to Samuel. His particular intention was, that Samuel should have a mere life estate : his general purpose was, that after Samuel’s death, the land should go to his issue, if he had any; but ultimately, if Samuel should have no issue, that it should be equally divided between his sons Henry and Charles, to the exclusion of all his other children. Whereas, if the testator meant to include Samuel in the terms, “ either of my sons before named,” he must have changed his intention, and instead of limiting the estate, upon the death of Samuel without heirs, exclusively, to Henry and Charles, have concluded to let in his son Solomon to a share of it, and possibly to the entire inheritance.
But admitting that Samuel is embraced in this limitation, I do not perceive that it can alter the case, unless by some rule of construction we are bound to assimilate the estate, created by the second limitation to the one created by the first. But I am ignorant of any such rule. On the contrary, the last manifested intention of a testator ought always to prevail, where there are repugnant devises in relation to the same subject matter. Nor do *17 I perceive any difficulty in the case, if we admit the devise to Samuel to be in tail, and still hold the subsequent limitations to be by way of executory devises in fee.
Suppose a devise to A. in tail, and remainder to B. and C. in fee; why may not the testator superadd a further limitation of the estate to other persons, for life or in tail, or in fee, upon the contingency of A. dying without any issue living at the time of his death? Again, suppose a devise of certain lands to A. in fee; of other lands to B. in tail; and other lands to C. for life: why may not an estate in fee be limited to survivors or to other persons, upon each of those devises, upon the contingency of a failure of issue of the first devisees, at the time of their death ? I see nothing to prevent such a limitation. In Davis v. Norton, 2 Pr. Will’s 390, S. C. 2 Cruis Dig. 291, Tit. 16 c. 1 sec. 63, lands were devised to W. H. and the heirs of his body; and if he died without issue in the lifetime of Alice Hooker, then to her for life; and after her death to M. S. for life, and after her death to the lessor of the plaintiff in fee. No question was made of the validity of these devises: the only doubt was, whether the devise over to M. S. for life and then to the lessor of the plaintiff in fee, had not failed by the death of Alice Hooker in the lifetime of the devisee in tail, who afterwards died without issue.
If we apply this principle to the case before us, upon the supposition, that the testator by the limitation over to “ survivors,” intended to indicate a definite failure of issue, the results might have been as follows: If Samuel had died leaving issue, the remainder over to Henry and Charles would have been in force, strictly as in case of an estate tail; but if Samuel had died without issue then living, the limitation over to the survivors in fee, would have taken effect by way of executory devise. So, on the other hand, if Henry, Charles or Solomon had died without issue living at the time of his death, the property left to the one so dying, would have gone to the survivors, in fee; and if Samuel had been one of those survivors, he would have taken his share of the estate of the one so dying: or the whole of it, if he alone survived, in fee, as an executory devise and not in tail, as he took the other land under the primary devise to himself.
In my opinion therefore, it is immaterial, whether the testator *18 intended to include Samuel, in the expression, “ either of my sons before named,” or not.
It only remains then to inquire, whether the testator intended in the limitation clause under consideration, a definite or indefinite failure of issue.
I know it has been asked, with an air of triumph, whether we can suppose, that'a testator intended, that if his first devisee should die leaving a child, and that child should die the next day, the estate should go to the heirs general of that child, instead of the peculiar objects of the testator’s benevolence next named in the will. 16 Johns. R. 401. And this it seems to be supposed, is a strong argument for cuttiug down the estate to an entailment. But I do not feel the force of this remark. A man’s sister or brother, or other relative, cannot be a very special object of his bounty, when he limits that bounty, on so remote and uncertain an event, as an indefinite failure of issue: it is more natural to suppose, that a man intended to give his son or devisee, an absolute estate in his lands, provided he has issue, who are to be educated and maintained, and who may live to enjoy it with him or after him. I think we ought to base our decision on a more substantial foundation ; and such in my opinion, may be discovered in this will. Let us examine it. The testator after making the devises to Henry, Charles and Solomon, and a bequest of two hundred dollars to the latter, immediately proceeds, without stopping to make any devise over, or to finish- what he had to say in reference to those gifts, to provide for his daughters. To one daughter he gives a moiety of his personal estate: and -also one half of the issues, rents and profits of his “ possessions,” until his heirs should come of proper age to inherit them: the other moiety of his personal estate and the rents &o. of his real estate, he gives to two other daughters. The testator then gives special diz;ections to his executors about renting out his possessions, and “ strictly ” charges them not to change the leases for the sake of an exhorbitant rent &c. It appears then that the testators devisees, were all under age and they were not to take, or “ inherit ” the lands until they came of “ proper age,” and the executors in the mean time were to lease them out, for the benefit of the three daughters, to whom he had given the intermediate rents and profits. The testator then devises certain lands to his daughter *19 Mary Wardell, and also gives her a legacy of one hundred dollars to be paid to her in one year after his decease, if she should be then eighteen years of age; and to another daughter he gives a legacy of fifty dollars, when she shall be of like age. The testator having thus made a primary disposition of his property real and personal among his children, annexes to his gifts, a condition or limitation in the following words : “ and it is my will that in case, either of my sons before named, should die without issue, that his share be equally divided betwixt my surviving sons, and like in my daughters, if either of them should die, before they receive their legacies,” (that is before they should be entitled to receive them) “ or have no issue, that then, their part or proportion to be divided, as aforesaid, between the surviving sisters.”
It is clear to my mind, that whatever the testator meant, by the limitation in the case of his sons, he meant precisely the same thing in the case of his daughters. He not only says, “ and like in my daughters, if &c.” but in both cases the limitation is to survivors. In respect to the sons, the “ share ” is to be equally divided ; and in the case of the daughters, the “ part or proportion,” which is the same thing as “share,” is to be equally divided, “ as aforesaid,” that is in the same manner as in the case of his sons. But the limitation to the daughters was clearly upon a definite failure of issue.
The language of the testator is, “ if either of my daughters should die before they receive their legacies, or have no issue, that then &c.” Both reason and authority unite in saying, that by or, the testator meant “ and,” and that it must be read “ and ” instead of “ or.” Surely the testator did not mean, that if his daughter Mary Wardell should have lawful issue, and then die before she received her legacy, the land should, go over to other persons. Here are two contingencies, and both must happen before the devise can fail. Eastman v. Baker, 1 Taunt. 174; Den v. Taylor et al. 2 South. 413; and see cases collected in 1 Pow. on Dev. 379, in mar. in 22 Law Lib. 223.
Then there comes in another rule of construction, which is, that when dying without issue, is coupled with another event which cannot be more remote, than the death of the devisee; or with any contingency, different from a failure of issue, it cannot *20 be an estate tail. The eases of Eastman v. Baker and Den v. Taylor, just cited, are clear upon this point; and see also Glover v. Monckton, 3 Bingh. 13 in 11 English Com. Law R. 9; and 2 Pow. on Dev. 573; 2 Dyer 124, a pl. 38 ; and 3 Dyer 354, a pl. 33.
Since, therefore, the testator certainly intended, that the devise over to “ the surviving sisters,” should take effect upon the death of either of them, without issue living at the time of her death, I cannot resist the conviction, that he supposed the devise over to his surviving sons,.was to take effect upon the same contingency. By this construction we give meaning and effect to the testator's language, when he says, “ and like in my daughters ;” meaning no doubt, in like manner; or in the same way; and we make the word survivors, mean the same thing, and give it the same effect in both cases. We cannot assimilate the limitation in the case of the “daughters to the limitation in the case of the sons; because the former admits of no construction but that which always follows a double contingency; and therefore, if the testator intended the same contingency in both eases, we must overrule that intention,; or assimilate the one in the case of the sons, to that plainly intended in the case of the daughters.
It will be perceived that thus far I have laid no stress on the words, “ my surviving sons,” and “ the surviving sisters;” as of themselves sufficient to settle the testator's intention; nor have I put myself upon any of the New York, or other American decisions on the effect of the word “ survivors.” Nevertheless, if there were nothing else in this will to indicate the mind of the testator in respect to the contingency, upon which he intended the limitation over should take effect, I should be strongly inclined to consider, the use of those words as sufficient to show that the testator intended the devise over to take effect upon the death of either of his sons without issue then living. It is true, that in many cases, (most of which may be found collected in the late edition of Pow. on Dev. 723, ch. 36, published in the Law Lib. for the purpose of effecting the testator’s intention, the word “ survivors,” has been held to mean “ others.” But we' cannot suppose the testator in this case used the terms, “ my surviving sons,” in the sense of my other sons. This was certainly not his meaning, whatever may he the legal effect of his language. He undoubtedly meant by his “surviving sons,” *21 such of them as should be living and actually survive the event to which he had reference, to the exclusion of such of them as might die before that event happened. He supposed then, that some of his sons might be living, when the event should happen, if it ever did, upon w hieh the devise over should take effect. But if the testator did not mean, a failure of issue at the death of his sons, but at some future time, and which he certainly knew, might not happen, if it ever did, in hundreds of years, he could ¡not have supposed that any of his sons would survive the event. He had then in his mind an event, that must happen, if it ever did, at the time of the death of his son or sons, who should first die. He intended then, by “dying without issue,” what the law calls, a definite failure of issue.
This construction of the will in question, so far as it depends upon the limitation over to survivors, is more in accordance with the common sense of mankind, and I think, more in harmony with all the reported decisions of this court in which the question lias been in any degree involved, than the construction contended for by the plaintiff’s counsel. The case of Den v. Moore et al. Coxe’s R. 386, seems to me to have been misreported, or misapprehended by the defendant’s counsel. If I understand that case, it was perfectly immaterial, whether the devisee took an estate tail, or not. There was one devise to Lancet, another to Jonathan and another to Jonadab, to their heirs and assigns forever ; and if either of them died without issue, his share should go to him or them that survived. Jonadab died leaving issue, so that his share was not in dispute. Lancet conveyed his share to Moore and then died, without having had issue, and Jonathan the surviving brother, was the lessor of the plaintiff The action was brought to recover the land that had been devised to Lancet, and the reporter tells us, that the only question was, whether Lancet took an estate in fee simple, or in fee tail, and adds, if he took an estate in fee simple, then the title was in the defendant; but if in tail, then the plaintiff was entitled to recover. Now it seems to me, the question was entirely misstated. It was not whether Lancet took an estate tail, or in fee simple; but whether he took an estate tail, or a fee simple with an executory devise over. As the case is stated, there was no pretence of a fee simple absolute. It was either an estate in fee, with an executory *22 devise over, or it was a fee tail; and yet, whether the devise over to the survivors was upon a definite or an indefinite failure of issue, does not seem to have been submitted to t¡he court, or agitated by counsel. It was then, in my opinion, immaterial whether Lancet had a fee tail, or a fee, subject to be defeated upon his death without issue then living. If the former, then Jonathan was entitled to the remainder in fee; and if the latter, Jonathan was equally entitled to recover, because Lancet had never had any issue, and therefore his conveyance to Moore was inoperative.
I concur therefore, in giving judgment for the defendant.
It is true, the father of the lessor of the plaintiff, aliened the lands, before she was born, and consequently before he had any absolute estate in fee in the premises. But he conveyed with full covenants of warranty, and as she survived him, whereby the estate became absolute in him, those covenants have descended upon her, and she cannot recover in opposition to them.
Nevius, J.
The lessor of the plaintiff claims title to the lands as- tenant in tail under the will of her grandfather, while the defendant insists, that the devise to Charles was a fee simple with a limitation over by way of executory devise, to be defeated upon the contingency of his death without issue then living. The question here presented, has often been elaborately discussed, both in the courts of Great Britain and in some of our sister states, and I may venture to say, seldom, if ever, with more ability and research, than on the present occasion. These discussions have resulted in conflicting decisions and opinions from the bench, which have increased the difficulty in arriving at a satisfactory conclusion.
Before adverting to the cases adduced by the counsel, in support of their respective constructions of the words of this will, I will consider the general principles which I deem applicable to the case, and by the light of which, I hope to reach the true intent of the testator. It will not be denied, that under this will, Charles became legally entitled to such an estate as it was the intention of the testator to .devise to him, if that intention is consistent with law. To find that intent, we are first to resort to the language used by the testator, in the clause containing or re *23 fering to the devise under consideration, if we can clearly discover it here, we need look no further. But if this is ambiguous and does not convey the intent with reasonable certainty, we are then to refer to other parts of the will, for the sense in which the testator has used the samo terms, for the whole instrument is to be taken together in the search for its true and legal construction. If upon such an examination, the question of intention is still unanswered, we may then resort to such rules of construction as have been adopted by judicial authority, bearing in mind, that in the construction of terms and phrases, we are to consider the character and condition of the person who used them, the customs and habits and general opinions of the country where used, and the laws which relate to the subject matter to which they are applied. 2 Mass. 62.
The language used by the testator in the case before us and in the clause containing the devise, is “ I give and bequeath to my sou Charles Warded all t he homestead farm, it being the plantation purchased by my father of William Lippincott.” Here are no words of inheritance or perpetuity, and at common law would pass only a life estate, if there were no devise over, and if no other intent could be collected from other parts of the will. But there are several reasons to warrant the conclusion, that the testator, by this clause, intended to devise to Charles a greater than a life estate in these lands. 1st. He gives to him all his farm, and this word all may apply as well to his estate in the land, as to the mere territorial limit of his title. The words “all his estate,” at common law would pass not only all the lands of the testator, but all the interest he had in them. Salk. 236: 6 Mod. 106; Cow. 299; 6 J. R. 185. Every word in a will must have a meaning imputed to it, if susceptible of a meaning. Unless we refer this word all therefore to the testator’s interest in this farm, we deny to it any effect, for otherwise the words “all my homestead farm,” are of the same import as “ my homestead farm. 2d. Where the devise over is on failure of issue at the death of the first taker, at common law the first devisee is held to take a fee without words of perpetuity. 2 Green 52. Eor reasons hereafter mentioned, I consider the de'vise over in this ease, dependent upon such contingency. 3d. Where the testator intended to limit the devise for life, he has done so in full *24 and explicit terms, as in the devise to Samuel, he declares “ he shall enjoy it no longer than his natural life.” And lastly, by the act of 1784, it is provided that all devises of land in which the words “heirs and assigns” are omitted and nothing contained in the will, by which it appears that it was intended for life only, and no further devise of the same land is made, after the decease of the devisee, shall convey a fee simple.
Here the testator has not in terms limited this devise to Charles for life, nor can such intent be inferred from other parts of the will; on the contrary, it is clear from the whole instrument, that he intended to give him a greater than a life estate, whether an estate tail or a fee simple with a limitation over by way of executory devise, I now proceed to inquire.
The character of this devise to Charles, depends upon the proper construction of this clause. “ In case either of my sons before named should die without issue, his share shall be equally divided betwixt my surviving sons.” Before determining the effect of this limitation over, it will be proper to decide, if we can, whether the testator intended to apply it to all his sons, or only to Samuel, Henry and Charles. They are named in the sentence immediately preceding that just cited, and as he had before provided, that on Samuel’s death without heirs, his share should go to Henry and Charles, it is fair to conclude, that by “ either of his sons before named,” he meant those he had just named together, and did not intend to include Solomon, for in that case the devise over to Henry and Charles, on the death of Samuel without heirs, might be partially defeated, if Solomon survived Samuel. This clause may be limited to his three sons without violence to any clearly expressed intent of the testator, or any settled rule of construction and indeed becomes necessary to give effect to the whole will. The question then is distinctly presented, what estate did they take under this will. The devise to Samuel differs in its terms from those to Henry and Charles and whether it is a life estate or by the rule in Shelly’s case, an estate in fee tail, is not now material to determine. The language used by the testator, clearly indicates that he intended to devise to him a different, if not a less estate, than to his other sons. But irrespective of the devise to Samuel, what estate did Henry and Charles take by the terms of this will? The plaintiff insists *25 they each took an estate tail and the defendant contends, it is a fee simple subject to be defeated upon the contingency of their death, without issue then living. If the limitation over is to take effect upon an indefinite failure of issue, the plaintiff is right; but if upon a definite failure, that is upon the failure of issue of Charles at his death, then the defendant’s construction must prevail.
It will not be improper here to define what an estate tail was at common law, what it became under the statute “ efe donis,” and how it was restrained under our own statute, and what is meant by “ an estate in fee with a limitation over by way of ex-ecutory devise.” An estate tail at common law was a conditional fee, limited to particular heirs, as the heirs of a man’s body, and by virtue of the statute of Westminster, was converted into what was termed a “fee tail,” which then vested in the donee an estate which continued in him and his issue as long as any remained to the remotest generation, and leaving in the donor the ultimate fee simple expectant upon a final failure of issue at any however remote period it might happen. This estate passed from the first donee to the issue of his body under the same rules that regulated the descent of fee simple estates, giving to the male and to the eldest, preference over all the rest. The effect of this statute was to restrain alienation and preserve the title in the same family and was favored by the policy of the country where it originated. Blackstone informs us, that the nobility of England procured the passage of this statute, to perpetuate their possessions and stop the power and practice of alienating a conditional fee, as soon as the condition was supposed to be performed by the birth of issue. Such was the law in England at the period of the revolution, and by our constitution was adopted as part of our own system. But after the revolution, titles of nobility being extinguished, it became the policy of the government, and corresponded with the character of our institutions to untrammel property from the restraints upon alienation : and accordingly the legislature in 1784, passed an act providing, among other things, that all devises which should thereafter be made in tail, should be taken to vest in, and entitle the person to whom the same might descend agreeably to the entailment, after the decease of the first devisee, to all the estate which the testator had *26 in the lands so devised. Such was the law of New Jersey in respect to estates, tail at the execution of this will, and had been, for nineteen years before, and such is still the law.
An executory devise is defined, to be such a disposition of lands by last will, that thereby'no estate vests at the death of the devisor, but only on some future contingency which must not be too remote, but must happen within a life or lives in being and one and twenty years afterwards, and by it a fee simple or other less estate may be limited after a fee simple. 2d Blac. 173. If the limitation of this devise over is to take effect upon the ultimate or indefinite failure of the issue of Charles, the contingency is too remote to constitute it an executory devise, if to take effect upon failure of issue at Charles’ death, it cannot be an estate tail.
The question then is distinctly presented, did the testator intend this devise over to take effect upon the failure of issue at Charles’ death, or upon the indefinite failure of his issue ? I am of opinion, that the true construction of the language used by the testator, upon the principles I have already adverted to, is that the devise shall take effect at Charles’ death if he died without issue then living, and that consequently the estate devised is not an estate tail, but an executory devise, and for the following reasons:
First, Because by the law of this state concerning entailments, at the time this will was made, the testator could not by the terms here used, perpetuate the estate in his own family beyond the second donee in tail, and no motive consistent with the policy of the country, or the ordinary feelings of a parent, can be assigned why he should select as the object of his bounty, the eldest unborn son of Charles, to the exclusion of the rest.
Secondly, Because a devise over after an estate tail cannot take effect, till after an indefinite failure of issue, and in this case, could not take effect at all if Charles died leaving issue, for such issue would, under the statute of 1784, become invested with a fee simple absolute in the lands and thereby the devise over to the surviving sons, must be defeated.
Thirdly, Because the natural import of the words employed by the testator, taken in connection with the law relating to the subject, and the limitation over to his “ surviving sons ” if either *27 should “die without issue,” implies a failure of issue at the death of the first devisee.
And lastly, because the testator has used the same language in the next clause of his will, where he limits over to his surviving daughters, the personal property bequeathed to all of them on the death of either without issue.
If 1 am correct in this view of the subject it will follow, that the estate devised to Charles, is a fee simple, and was subject to be defeated by the contingency of his death without issue, which did not happen. And as the conveyance made by him to Thompson was of his whole estate and interest in the lands, the latter, became seized of such contingent fee simple, which, upon the death of the former leaving issue, cannot be defeated in an action by such issue.
I should deem it unnecessary to say anything further upon this subject, but for the stress which counsel have placed upon the cases cited by them. Some of these I will briefly examine, and see how far they sustain the views I have expressed. The current of English authorities undoubtedly maintains the doctrine, that a limitation in a devise over on a failure of issue, means a general and indefinite failure of issue. I will not here refer to the cases for they are all to be found in the very elaborate opinion of Chancellor Kent, as reported in Jackson v. Anderson, 16 J. R. 397. It must however be borne in mind, that this construction prevailed in a country where estates tail were favored, and where courts were inclined to strained interpretations in support of (hem, and where a long course of decisions has settled the construction of certain words or phrases in a will, it would not be unreasonable to suppose, that the same would be used after-wards understandingly and with reference to such judicial construction. Yet even in the English courts there are many cases found, which show a strong disposition in the judges to evade the construction which so much favored entailments. Terms which, in their connection and ordinary acceptation, ought not to have changed the meaning of a sentence, have been seized upon as the ground and warrant for different decisions. Thus, in the case reported in Dyer, 334, the words “ if he die without issue living the executors, then to the executors” were adjudged to mean a definite failure of issue. In Pells v. Brown. Cro. Jas. 590, the words *28 “ if T. die without issue living W. then to W.” were adjudged an executory devise, and so in 3 T. R. 143, “ if he die leaving no issue behind him,” were also held to be an executory devise. The same construction was given to the words “ if he should depart this life and leave no issue.” 7 T. R. 589. These cases and others that might be cited, show a disposition in the English courts to depart from their own authorities upon this subject, on slight pretences. For I confess I am somewhat at a loss to discover any substantial difference in the meaning of the phrase, “ if he die without issue,” and the following, viz: “ if he die without leaving issue,” and “ if he depart this life and leave no issue,” and “ if he die leaving no issue behind him.” I think these several expressions would convey to a mind unversed in legal technicalities, the same meaning, and that the failure of issue intended a failure at the death of the first devisee. But whatever rule of construction may govern the courts of Great Britain, on this subject, I deem it safe to rely upon American decisions as my guide. The whole policy of our laws touching the descent, the devise and the alienation of real estates, differs from theirs, and of consequence a less rigid rule of construction should prevail as more consistent with that policy, and best calculated to carry out the intentions of a testator.
And in examining such American authorities as have dime within my reach, I find them sustaining the view I have taken. I refer to the case of Richardson v. Noyes, 2 Mass. 58, as a leading case, and I do so the more especially as its authority is attempted to be impugned by Chancellor Kent, in his opinion in the case' of Anderson and Jackson already referred to. Mr. Justice Sedgwick delivered the opinion of the court in Richardson v. Noyes, and the learned Chancellor, whose judicial opinions are of high authority, says that Mr. Sedgwick in that case admitted the general rule, that if a devise be to A. and he die without issue or without children, then the devise over, he would by the English law take an estate tail, but that he relied upon the word “ children ” and much upon the circumstances in that case, that certain personal property was made to vest in remainder upon the same event. It is true that the learned judge did place some stress upon the word children and also upon the circumstance, that personal property was made to depend upon the same con *29 tingency, but I do not understand him as resting his opinion on those points, but only referring to them as additional arguments in support of the construction he had given to the will in that case. His strong ground against the English rule of construction, is the difference in the law of descents both as to fee simple and fee tail estates, in this country and in Great Britain, and he asks emphatically, “ did the testator intend by children the eldest son ?” and answers that it is impossible for him to believe it. The same question may be put in the case before us. Did the testator mean by “ issue ” the eldest son of Charles ? I think the same answer may be given.
In die state of New York a series of cases is to be found in support of the principle, “ that a limitation over to survivors on a failure of issue, limits the failure to the death of the first taker.” Many of these cases employed the best talents of that able bar, in their discussion, and the solemn decision of one of the most respectable and learned Judicial tribunals of the country, was again and again pronounced in favor of the construction just mentioned, and these decisions have been sustained by the court for the correction of errors, upon solemn argument, and are now esteemed the settled law of that state. It is true that the learned Chancellor, already named, in the case of Anderson and Jackson, in 1819, made a powerful effort to prove, that he himself, as well as his colleagues upon the bench of the Supreme Court, had been misled in adopting the rule above mentioned ; but this attempt proved abortive and failed to convince the court before which it was made. Neither his argument nor his authorities satisfy my mind, that the Supreme Court of New York committed such error.
In our own courts the question here involved has not undergone a direct adjudication, but as far as occasion has called for a reference to it, the strong inclination of the court has been in favor of the New York decisions. In the case of Den v. Taylor, 2 South. R. 413, the devise was to S. S. his heirs and assigns forever, in case he should die before he arrives at lawful age, or have lawful issue, then over. The court adjudged this an estate in fee, with executory devise, for the devise over was not intend - ed t.o take effect upon an indefinite failure of issue, but upon a contingency connected with that event, which must take place, 'I *30 at all, at or before S. S. attained twenty-one years. Chief Justice Kirkpatrick remarks in his opinion in this case, “ if a devise be to a man and his heirs, and if he die without issue, or without leaving issue, or without issue surviving him, or words to that effect, then to another, a plain man would say, that if the devisee had issue and should leave such issue surviving him, at the time of his death, the estate should not go over, for the contingency upon which it was limited had not happened, he had not died without leaving issue;” and “this” he continues, “seems the natural import of the language.” Yet notwithstanding he admits this to be the plain meaning of the words and the manifest intent of the devise, still he remarks, “ it is not to be so understood in the law when applied to devises of land,” “ then it means an indefinite failure of issue.” I ask, why should not such intent prevail ? Is it because the decisions in English courts, where estates tail were well understood, and constantly created by will, have given these words such a construction ? Can it be that under our laws, where estates tail are discouraged and virtually abolished, where the words “ indefinite failure of issue ” are known and understood only by professional men, that the manifest intention of a testator should yield to what in this country, at least, is an arbitrary rule of construction, not founded in reason or necessity or sound policy ? But whatever weight is to be attached to this opinion of the Chief Justice, it does not cover the case before us.
In the ease of Den v. Schenck, 3 Hal. 29, the words of the will were, “ if any of my children should happen to die without issue alive, that such share or dividend, shall be divided by the survivors of them.” Gilbert, to whom his real estate was devised, died without issue, but it was after the death of the other children. The court held, that the testator had no such thing in his mind, as an indefinite failure of issue, and that the estate to Gilbert was a fee simple, defeasible on his death without issue alive, and the survivorship of his sisters. Although he died without issue, yet as his sisters did not survive him, the fee simple remained in him and his deed was held to be good. The court attached some importance to the word “alive” but it seems to me rather to evade the force of the English cases, than from the natural import of the term as used in its connection. Eor *31 “ dying without issue ” and “ without issue alive,” would seem to convey the same meaning, as it is living issue who are alone to take.
In Den v. Snitcher, 2 Gr. 53, the words were, “ if he shall die without issue, that then at his decease the plantation shall be divided.” The court held this an executory devise, because they said the limitation over was on an indefinite failure of issue, as the devise over was to take effect “ at the decease ” of the first devisee. To my mind the words, “ at his decease,” did not vary the meaning of the sentence, the word “ then,” if it means any thing, means the time of his decease, if without issue.
All these cases in our own court show its disposition to break away from the trammels of the English rule, and I apprehend it is much better at once to adopt the principle of the New York decisions, as more conformable with our own institutions and laws, with the reason of the thing and the intent of the testator.
I will not advert to any other cases that have been cited in the argument, they cast but little additional light on the subject, but content myself with repeating, that in my opinion the true construction of this will, gives to Charles a fee simple estate, with limitation over by way of executory devise; that his deed to Thompson must prevail, that the verdict in this case should be set aside, and judgment be entered for the defendant.
White and Elmer Justices, concurred.

Judgment for defendant.

Cited in Seddell v. Willis, Spenc. 225; Den, Howell v. Howell, Id. 415-421; Armstrong v. Kent, 1 Zab. 519; Morehouse v. Cotheal, 2 Zab. 438; Moore v. Rake, 2 Dutch. 585; Kennedy v. Kennedy, 5 Dutch. 188; Kent v. Amstrong, 2 Hal. Ch. 640; Fairchild v. Crane, 2 Beas. 108.