LION, The (UNITED STATES v.). See Case No. 15,607.

## Case No. 8,380.

### LIPPETT v. HOPKINS et al.

### [1 Gall. 454.] 1

Circuit Court, D. Rhode Island. June Term, 1813.

REAL PROPERTY—EXECUTORY DEVISE—WILLS.

A devise to A. "and if he shall die, without an heir, before he shall arrive at the age of twenty-one years, that then all that is herein to him bequeathed, to be equally divided amongst his brothers and sisters, or their heirs;" A. takes a fee-simple with an executory devise over to his brothers and sisters.

[Cited in Lillibridge v. Adie, Case No. 8,350; Arnold v. Buffum, Id. 554; Abbott v. Essex Co., Id. 11.]

[Cited in Morris v. Potter, 10 R. I. 63.]

Ejectment for a tract of land lying in Scituate, in Rhode Island. The defendants [Timothy Hopkins and others], as to ninety acres, parcel of the premises described in the declaration, pleaded in bar the statute of limitations of Rhode Island, which provides, that twenty years' quiet possession shall "give and make a good and rightful title," &c. And as to the residue of the demanded premises, they disclaimed. They also pleaded the general issue "Not guilty," as to the whole. The plaintiff, in his replication, set out the proviso of the statute, allowing ten years to any remainder-man, &c., after the accruing of his right, and then recited at large the will of Moses Lippett, the material parts of which will be found in the opinion of the court. He then alleged, after averring the death of the testator, &c., that the premises devised (being the same demanded in this action) became vested in John Lippett, as tenant for life, and that the fee-simple vested in Moses Lippett, from whom it descended to him, and that on the death of said John, being more than twenty-one years of age, the remainder vested in him, the plaintiff. To this plea, after oyer of the last will and testament recited in the plaintiff's replication, the defendants demurred generally, and the plaintiff joined in demurrer.

STORY, Circuit Justice. This is an action of ejectment brought to recover a lot of land

1 [Reported by John Gallison, Esq.]

situate at High Plain so called. The plaintiff claims as heir at law at the common law. The controversy has chiefly turned upon the construction of a devise in the will of Moses Lippett, the grand-father of the plaintiff, and without a particular examination of the pleadings, I shall at present confine myself to that consideration. The case is in short this. The testator made his will on the 20th of June, 1744, which was duly proved and allowed by the court of probate on the 24th of January, 1745. In that will, after the usual introductory words, "as to my worldly estate, &c., I do dispose of the same in manner following:" Imprimis, he gives to his son Moses certain estate, &c., "to him and his heirs forever." Secondly, to his son Jeremiah, &c., "to him and his heirs forever." Thirdly, to his son Christopher, &c., "to him and his heirs forever." Fourthly, to his son Joseph, &c., "to him and his heirs forever." Then comes the clause in question. "Fifthly, I give and bequeath to John, my dearly beloved son. my lot of land lying to the eastward of the great pond in Warwick, together with an addition lot joining thereto, with also my lot of land in Warwick, joining to George Roberts' land, with one half of the Thatch creek joining to said lot, with also one half of my lot of land joining to John Warner's, called Edward Carter's Place, with one half my lot of land at the Long Meadow, so called, in Warwick Neck, with also one half my homestead farm, with one half of all the buildings thereon, (the best room in my dwelling house, wherein I now dwell, excepted), with also one half of my live stock, with also one half of the appurtenances (in every respect) belonging to the tanning business, together with one half of the stock thereof. Further, I give and bequeath to John, my dearly beloved son, the sum of one hundred pounds current money of the old tenor of this colony, with also one feather bed with sufficient furniture, with also a sufficiency of bedding, with bedstead and cord, with also my silver tankard and my great Bible, all to be delivered him by my executrix hereafter named, when he shall arrive to the age of twenty-one years; and if he shall die without an heir before he shall arrive to the age of twenty-one years. that then all that is herein to him bequeathed, to be equally divided amongst his brothers and sisters, or their heirs, to be delivered to them as aforesaid. Further, I give and bequeath to John, my beloved son, my one hundred and eighty acre lot of land to the westward of the seven mile line of Providence, upon High Plain so called, to be delivered to him as aforesaid." John survived the testator and died after arrival at twenty-one years of age. There is a residuary devise of all the real and personal estate undisposed of to the testator's wife, "to her and her heirs freely to be possessed and enjoyed." The question is, what estate John (under whom the defendants claim) took in the lot on High Plain.

It is contended by the plaintiff, that John took an estate for life only in any part of the real estate devised to him; and at all events in the land on High Plain. On the other side it is contended, that John took an estate in fee or fee tail, in all the real estate devised to him.

The case has been very well argued on both sides, and I shall now proceed to deliver the opinion, which, on mature deliberation, I have formed.

I will first consider what estate John took in the lands in Warwick, devised in the first clause. The first rule in the construction of a will is, to effectuate the declared intention of the testator, if by law it may prevail. To this rule all others bend. But the intention of the testator must be clear and explicit, for the heir at law is not to be disinherited, unless by express words or manifest intention. Prec. Ch. 381, 439; Cro. Car. 368; 3 Term R. 83; 8 Term R. 579. Upon this ground it is, that if a devise of land be without expressing any particular estate, the devisee takes an estate for life only, unless from the context a greater estate was manifestly intended. Latch, 40; Poll. 541; Cowp. 240, 355, 659, 841; Doug. 759; 7 Term R. 635; 1 Brown, Ch. 489; 5 Term R. 320, 558; 6 Term R. 175; 8 Term R. 64; 2 P. Wms. 335; 6 Term R. 610. It is highly probable, as observed by Lord Mansfield in Loveacres v. Blight, Cowp. 355., that almost every case determined by this rule, as applied to a devise of lands in a will, has defeated the real intention of the testator; for common people, and even others, who have some knowledge of law, do not distinguish between a bequest of personalty, and a devise of land or real estate. Still this has become an inveterate and settled construction, and cannot be overturned without the most extensive injustice. It grew up, when wills were subjected to many of the niceties of grants according to the course of the common law, and whatever might be our wishes, we must acquiesce in its binding efficacy, if not in its wisdom. Nor is it sufficient for the testator to express a general intention to dispose of all his property, to turn an estate, otherwise for life, to a more enlarged estate. For though general introductory words to this effect may sometimes aid in the construction of doubtful and obscure clauses, yet they are not permitted to supply material defects, or to convert a life estate into a fee. 5 Term R. 13; 6 Term R. 612; 8 Term R. 64; 4 Bos. & P. 335; 2 W. Bl. 889; Cowp. 352, 657; Doug. 759.

Courts of law, however, are solicitous to effectuate the real intention of the testator, when it can be legally inferred from the words of the will. They will therefore bring different clauses in aid of each other, enlarge the sense of some words, and restrain that of others, and combine different devises, in order, if possible, to give an uniform construction to the whole will. and supply the defects of counsel in the last extremity of life. Upon this principle it has been resolved, that if a

devise be made to one without specifying any estate, and in case of an indefinite failure of his issue, a devise over, the first devisee shall take an estate tail, for it is manifest that the testator intended a benefit to the issue, and that the estate should not cease, but on a general failure; and this intention can be effected only by declaring the estate a fee tail in the ancestor. Forth v. Chapman, 1 P. Wms. 664; King v. Rumball, Cro. Jac. 448; Wyld v. Lewis, 1 Atk. 432; Denn v. Slater, 5 Term R. 335; Hope v. Taylor, 1 Burrows, 268; 9 Coke, 127; Moore, 682; 1 Vent. 231; 2 P. Wms. 194; 1 P. Wms. 605; Com. Dig. "Devise," N 5; 3 Mod. 123; 1 Rolle, Abr. 837; 4 Burrows, 2246; Hob. 65; Cro. Jac. 599; Willes, R. 1. And even where the estate to the first devisee has been expressly limited for life, and a devise over upon a like failure of his issue, the same construction has prevailed. Dict. Forth v. Chapman, 1 P. Wms. 667; Target v. Gaunt, Id. 432; Brice v. Smith, Willes, 1. And so, where no estate whatsoever has been directly devised, upon the implication arising from the devise over on the failure of his issue, the devisee has been permitted to take an estate tail. Goodright v. Goodridge, Willes, 369; Walter v. Drew, Comyn, 372. These are cases of an estate tail arising by implication. Nor has a less liberal construction been adopted as to a fee-simple. It is a settled principle, that where an estate is devised to one generally, with a remainder over upon a limited contingency, as upon his dying under twenty-one years of age, the first devisee shall take a fee-simple; for if the intent were to give only a life estate with remainder over, there could be no reason for limiting it to the death under age. This rule was avowed by the learned Saunders in Purefoy v. Rogers, 2 Saund. 388, as his private opinion, and has since been adopted and recognized in a series of decisions. Mooue v. Heaseman, 1 Willes, 138; Doa v. Cundall, 9 East, 400; Frogmorton v. Holyday, 3 Burrows, 618; Tomkins v. Tomkins, cited 1 Burrows, 234; Toovey v. Bassett, 10 East, 460; Robinson v. Grey, 9 East, 1: Richardson v. Noyes, 2 Mass. 56.

On the other hand, instances occur, in which the ordinary import of words is restrained, in order to carry into effect the apparent intention of the testator. Where therefore he devises to one and his heirs, and upon an "indefinite failure of his issue," remainder over, the word "heirs" is restrained to heirs of his body, in order to give effect to the remainder over, which otherwise would be too remote and void. Denn v. Shenton, Cowp. 410; Chadock v. Cowley, Cro. Jac. 695; Dict. Brice v. Smith, Willes, 1; Ide v. Ide, 5 Mass. 510; Com. Dig. "Devise," N 5. So if the devise be to one and his heirs, and upon an indefinite failure of heirs, then over to a person, who might be an heir of the first devisee, his estate is restrained to a fee-tail, for he could never be without heirs while the second devisee or his heirs existed; and therefore it is plain, that the testator used the word "heirs," as equivalent to "heirs of the body." Webb v. Hearing, Cro. Jac. 415; Parker v. Thacker, 3 Lev. 70; Goodright v. Goodridge, Willes, 369; Morgan v. Griffiths, Cowp. 234; Nottingham v. Jennings, 1 P. Wms. 23, Willes, 166, note; Brice v. Smith, Willes, 1; Preston v. Funnell, Id. 165; Doe v. Ellis, 9 East, 382. See, to the same purpose, Doe v. Bluck, 6 Taunt. 485, 2 Marsh, 170. But if, in a like case, the devise over were to a stranger, the general meaning of the word "heirs" would prevail, and the estate over, being too remote, would be void as an executory devise. Crumble v. Jones, Willes, 167, note; Attorney General v. Gill, 2 P. Wms. 369; Tilburgh v. Barbut, 1 Ves. Sr. 89, 3 Atk. 617; Doe v. Ellis, 9 East, 382; s. p., 1 Doug. 264; Amb. 363; 3 Term R. 488; Cro. Jac. 415. So also if the devise be to one and his heirs, and upon a limited contingency, to take effect in his life, as upon his dying under age, then over, the first estate is a fee simple, whether the ultimate devisee be an heir or a stranger; for the second devise would be upon a limited contingency, and good as an executory devise, and therefore it is not necessary to restrain the previous estate in order to effectuate the intention of the testator. The reason therefore of the restraining rule ceasing, the effect ceases also. This was first held in Pells v. Brown, Cro. Jac. 590, which, as Lord Kenyon has emphatically observed, is the Magna Charta of this branch of the law, and has never been departed from. Porter v. Bradley, 3 Term R. 143; Roe v. Jeffery, 7 Term R. 589; Doe v. Wetton, 2 Bos. & P. 324; Goodtitle v. Wood, Willes, 211; Robinson v. Grey, 9 East, 1; Fosdick v. Cornell, 1 Johns. 440; Jackson v. Blanshan, 3 Johns. 292, 6 Johns. 54; Hauer v. Sheetz, 2 Bin. 532; Ray v. Enslin, 2 Mass. 554. Vide 1 Taunt. 173; 5 Mass. 500; Com. Dig. "Devise," N 6. I might add also another class of cases, where a devise over after a fee, in case the devisee should die before he came of age, or without having issue, has been held a good executory devise, and the word "or" construed "and;" so that the second estate would be defeated, either by the first devisee attaining his age, or having issue; and the reason is, that otherwise if the first devisee should die under age, although he had issue living, the estate to him would be defeated, contrary to the manifest intention of the testator. 2 Strange, 1175; 1 Wils. 140; Fairfield v. Morgan, 2 Bos. & P. (N. R.) 38; Eastman v. Baker, 1 Taunt. 174; Doe v. Jessep, 12 East, 288. I have dwelt somewhat largely upon the foregoing classes of cases, because, in my judgment, they embrace all the law applicable to the question before the court, and virtually decide it.

Let us now attend to the wording of the present devise. It is apparent, that the testator did not know the distinction between the bequest of personal and real property; both are given uno flatu. The estate was to be delivered to John, by the executrix, when

he should arrive to the age of twenty-one years, and, according to the authorities, I take it to be clear, that the estate, whatever it was, was completely vested in him, subject to a future devestment upon the happening of the contingency (Doe v. Underdown, Willes, 293); "and if he shall die without an heir, before he shall arrive to the age of twenty-one years, that then all, that is herein to him bequeathed, to be equally divided amongst his brothers and sisters, or their heirs, to be delivered to them as aforesaid." The contingency, on which the estate was to go over, was limited to the period of his minority; it must take effect then, or not at all. Had the devise over been upon an indefinite failure of issue, then, according to the authorities which have been cited, John would have taken an estate tail. Had the estate been limited over upon the contingency of John's not arriving at age, it is clear by the same authorities, and particularly Goodtitle v. Whitby, 1 Burrows, 234; Frogmorton v. Holyday, 3 Burrows, 1618; Doe v. Cundall, 9 East, 400,—he would have had a fee simple. Do the words "without any heir," at all qualify or rebut the general presumption? There is not a single authority within my knowledge, that they would restrain the estate to a life estate, unless the case of Fowler v. Blackwell, 1 Comyn, 352, be considered such. The words there were in effect, "to my son A. after my wife's decease; and if it shall happen, that my son A. should die before he attain the age of twenty-one years, then the said lands shall descend to my son B. and his heirs forever." B. was his heir at law, and it was held by Mr. Justice Eyre, to whom it was referred, that A. took an estate for life only. Although this case has been cited in argument in several cases, I do not find that it is at all relied on by the court; and at most, it is but a single case, by a single judge, against the current of authority. In Tilbury v. Barbut, 3 Atk. 617, where the devise over was upon an indefinite failure, "without any heir," it was held that the first devisee had an estate tail; and in Toovey v. Bassett, 10 East, 460, where the devise over was in case of the death of either of the testator's grandchildren, "under age and without leaving any lawful issue," (a case very much resembling the present) it was held a fee simple. I think, therefore, upon the footing of authority, it must be held that John took either an estate in tail, or in fee, in the lands in Warwick. Upon principle, also, I mean the principle that the testator's intention shall be effectuated, if by law it may, the same conclusion must inevitably result. If the testator designed that John should have a life estate only why did he limit it over, on his dying under twenty-one? Why was it further qualified with so dying "without an heir?" Without any such limitation, it would, upon the death of John, have passed over to the other brothers and sisters, by a simple devise after his death. It is manifest, also, that John was not a dis-

inherited child; all his brothers have a direct fee given. But John was under age, and unmarried, and the testator wished to provide for his issue, if he had any, and to give him the complete control of the estate, if he arrived of age. I am satisfied that we are bound to give effect to all the words of the will, if we can; and I cannot strike out the words "if he shall die without an heir, before he shall arrive at the age of twenty-one years." If not, then, to give them effect, John must either have an estate in tail or in fee. And I have no doubt at all that John's estate was a fee simple. The cases of Webb v. Hearing, Cro. Jac. 415, 1 Roll. 398, 436, and Denn v. Slater, 5 Term R. 335, have been relied on, to prove it an estate tail.

As to the first, the words were, "I bequeath to Francis, my son, my houses in London, after the death of my wife; and if my three daughters, or either of them, do outlive their mother, and Francis, their brother, and his heirs, then they to enjoy the same houses for term of their lives; and the same houses then I give to my sister's sons, &c. they paying," &c. And it was held that Francis took an estate tail; for that "heirs," in this place, meant "heirs of his body;" for the limitation being to his sisters, it is necessarily to be intended, that it was, if he should die without issue of his body, for they are his heirs collateral. It was further held, that the estate of the daughters was not contingent. It is apparent then that this case turned on the distinction, which I have before mentioned, of a devise over after an indefinite failure of issue, (for the word "heirs" was held to mean "issue,") and not on a devise over on a contingency limited to the life of the first devisee, and so is conformable to all the cases. As to the case of Denn v. Slater, 5 Term R. 335, the words were "to my nephew A, but if the aforesaid A should die without heir male, then my will is that my nephew B shall enter upon and enjoy, &c. his heirs or assigns forever." The court held that A took an estate tail; and this decision conformed to Blaxton v. Stone, 3 Mod. 123, and Burley's Case, cited in 1 Vent. 230. It turned upon the intent of the testator, and the distinction which I have already stated. Besides, the words were express "heir male," which were peculiarly applicable to an estate tail. It is true, Lord Kenyon says, "the word 'heirs' has been always construed in that confined sense, where the remainder over was to a collateral heir." But it is evident his lordship was speaking in reference to the case before him, which was of a devise over upon an indefinite failure of heirs, and not upon a limited contingency. If he were to be otherwise understood, the assertion would encounter a series of ancient as well as modern authorities, and even his lordship's own deliberate opinion in Porter v. Bradley, 3 Term R. 143, and Roe v. Jeffery, 7 Term R. 589.

But there is another authority, which, though not cited at the argument, I cannot consistently pass over, from the weight which I cannot but attach to it, from the acknowledged learning and ability of the court who decided it. It is the case of Burkart v. Bucher, 2 Bin. 455. In substance the devise was "to my son A, and if the said A should chance to die without heir or issue, the above said lands must fall into the possession of his brother B." And it was held, that A took an estate in fee tail only. If this decision rested on the ground, that the limitation was to B only upon the indefinite failure of issue; and not upon the failure during the life of B; it is perfectly consistent with all the authorities. But the court did not decide the point either way, and said, that it was quite consistent, supposing that the limitation was confined to the dying without issue in the lifetime of B, that A should take an estate tail. I entertain the most entire respect for the supreme court of Pennsylvania, and should not venture to doubt their opinion, unless upon urgent occasions. But if the intimation were intended to be, that supposing a devise to one, and then over to a collateral heir, on a contingency of dying without issue living at the death of the first devisee, the first devisee would take an estate tail, without further words manifesting such intent, I am not prepared to admit the position without further consideration, and I think my doubt fortified by adjudged cases. Moone v. Heaseman, Willes, 138; Doe v. Cundall, 9 East, 400; Toovey v. Bassett, 10 East, 460; and Robinson v. Grey, 9 East, 1. I do not think, however, that such a construction is fairly to be put upon the words of the court. The remark imports no more, than that a limitation over may be engrafted on an estate tail, as well as an estate in fee, to take effect upon a contingency limited to the death of the first devisee; and of this, there can be no legal doubt. Vide Spalding v. Spalding, Cro. Car. 185.

The cases then, which were supposed to afford an authority to construe the present an estate tail, are clearly distinguishable. But on the other hand, there are numerous cases, which decide that where land is given to A and his heirs, and if he die before arrival at age, then over in fee, A has an estate in fee; and this equally applies, whether the estate over be given to a stranger or to collateral heirs. I have already cited many of these authorities. They all concur; and there can be no necessity to bring them in review. Tomkins v. Tomkins, cited 1 Burrows, 234; Doe v. Cundall, 9 East, 400; Robinson v. Grey, Id. 1; and Toovey v. Bassett, 10 East, 460,—are all very strong to the purpose. In the face of such authorities, with not one single doubt as to the intent of the testator, I cannot venture to declare, that John took less than a fee simple in the lands at Warwick.

The next question is, whether the lot at High Plain was devised to him in the same manner. I have no doubt that the words "to be delivered him as aforesaid," convey to John the same estate, which was devised to him in the other lands. The lands were to be delivered to him by the executrix, upon his attaining twenty-one years of age, and in the same manner. It appears to me, that there is nothing on which to hang a doubt, as to this point. The only possible question would, in another event, have been, whether the words "as aforesaid," refer back so far, as to include the contingent limitation to the brothers and sisters, and their heirs. But as John arrived of age, it is unnecessary to decide that point, though I do not profess to see much difficulty in it. But admitting that John had either an estate in tail, or in fee, it is equally fatal to the plaintiff. I am therefore of opinion, on the special pleadings, that judgment should be for the defendants.