### *MOLLIE C. HULSE v. ARISTEUS HULSE ET AL.

CONSTRUCTION OF A DEVISE.

A devise of lands to "A." for and during the term of his natural life, "with a gift over upon his dying under twenty-one," will not be construed by implication as a fee-simple in "A."

ERROR to the Court of Common Pleas of Pickaway county.

This was a petition filed by Aristeus Hulse in the court of common pleas of said county, for the partition of lands. The defendant below, Mollie C. Hulse, filed an answer, denying the right of the petitioner and the codefendants, James R. Hulse and Hepzibah Hulse, in the premises, and setting up the will of James Hulse, deceased, in order to show the right of the said Mollie C. Hulse to the said lands, and also setting up the will of Jonas Hulse, under which she claimed as his devisee.

The principal question in this case was the construction of the devise to Jonas Hulse. The important parts of the will are as follows:

I. "I give and devise to my wife, Mary A. Hulse, for and during her widowhood, 203¾ A. of land with the appurtenances, in the Cable Survey, etc. (description omitted).

"I also give to my wife during her widowhood the interest or dividends of $5,000 stock I own in the Exchange Bank of Circleville, Ohio.

"I also give and devise absolutely to my wife all the furniture, clothing and household goods of which I die possessed.

"I also give and devise absolutely to my wife, two horses, three cows, that I may die possessed of, the choice to be made by her. I also give and devise absolutely my buggy and harness to her. The aforesaid bequests and devises to my wife to be in full and in lieu of any and all further claim upon my estate, whether of dower, year's support or distributive share, and to be received by her as her full share and portion in my estate.

II. "I give and devise to my son Aristeus Hulse, his heirs and assigns, a tract of land about 4½ A., more or less (description omitted). Also to Aristeus Hulse, his heirs and assigns, all that small portion of land, being an acre more or less, lying south, etc. (description omitted).

"I give and devise to my said son Aristeus, and to his heirs, $1,000 of the stock I own in the C., D. & L. turnpike. I also give and devise to my said son Aristeus, and his heirs, $100 stock I own in the stock scales.

III. "I give and devise to my son James, for and during the term of his natural life, 335¼ A. of land, more or less, and the same tract I bought of Wm. Hughes and wife. I also give and devise to my son James for and during the term of his natural life, 70 acres of land, etc. (description omitted.)

---

*This case was affirmed by the Supreme Court, without report, October 23, 1888, on the grounds stated in this opinion.

"I give and devise said 335¼ acres with the said 70 acres of land, after the death of my son James, to his children and to their heirs, share and share alike, reserving, however, dower therein to the widow of my son James, should he die leaving a widow.

IV. "I give and devise to my daughter Hepzibah, for and during the term of her natural life, all those tracts or parcels of land by me bought of John Walke and wife, which has heretofore been in the use and occupation of my son James, as I suppose over 200 A. The land I bought of Walke and wife, not hereby devised to my daughter, being the land conveyed to my son Aristeus, and 70 A. occupied by myself. At the death of my daughter Hepzibah I give and devise the said lands, so given to her for life, to my grandchildren then living, and to their heirs, share and share alike, unless my said daughter Hepzibah should leave child or children, in which case the said land so willed to her for life I give and devise to her child or children and their heirs. I give to my said daughter Hepzibah $1,000 in money, to be paid to her by my executors as soon as convenient out of my personal estate.

V. "I give and devise to my son Jonas, for and during the term of his natural life, all the land I own in the Cable tract, south of the pike and the Dawson road; 203¾ A. thereof being subject to the life estate of his mother.

"I also give to my son Jonas, for and during the term of his natural life, 180 A. of land, more or less, the same I bought of William Hurst. Also to my son Jonas for and during the term of his natural life 60 A. of land, more or less, the same I bought of John McDaniels.

"Also to my son Jonas for and during the term of his natural life the undivided half of 381½ A. of land, being the same tract of land purchased by me of John Cradlebaugh, excepting 70 A. thereof devised to my son James.

VI. "I give and devise to my daughter Effie Jane, for and during the term of her natural life, all that portion of the tract of land bought of John Walke and wife not herein before devised, being the 70 acres, more or less, joining the Cable tract on the east.

"Also to my daughter Effie Jane, for and during the term of her natural life, all of the Cable tract lying north of the turnpike and Dawson road.

"Also to my daughter Effie Jane, for and during the term of her natural life, the undivided half of 308½ A. of land, and the same land bought of John Cradlebaugh, excepting therefrom 70 acres herein devised to my son James and his children.

VII. "I give and devise to my son Jonas $5,000 of the stock I own in the Pickaway county bank, to be paid to him on his coming to the age of 21 years.

"I give and devise to my daughter Effie Jane $5,000 of the stock I own in the Pickaway county bank, to be paid to her on her coming to the age of 21 years.

VIII. "In the event that either my son Jonas dies before he reaches the age of 21, or that my daughter Effie Jane dies before she reaches the age of 21 years; in that case I will and devise, that the real estate herein devised to the one so dying shall go and be divided, share and share alike, between the survivor of said two, Jonas and Effie Jane, and my other children; giving to said survivor and my other children life estates with reversion to their heirs in fee-simple. The said survivor of Jonas and Effie Jane to take share and share alike with my other children. And further, in the event of either Jonas or Effie Jane dying before reaching the age of 21, without lawful issue, I will and direct the said $5,000 of bank stock hereinbefore devised to the one so dying, shall go and vest in the survivor alone, to-wit, Jonas or Effie Jane.

IX. "I give and bequeath to the children of my son James $1,000 of my stock in the Pickaway county bank, the interest of the same to be paid for their use and benefit by my executors at the time of the dividends, and the said stock to be paid to them when the youngest shall become of age."

The testator further directed the executors to collect the debts due him, and after the payment of debts and expenses, the remainder was to be divided into five parts and paid to his five children, except as to his son James, the interest of his share should be paid to him, and at his death the said share to be paid to his children. He also provided for the disposition of his bank stock not devised and the $5,000 set aside for the use of his wife, all of which, after her decease, was to be divided among his five children, share and share alike, except that James should receive the interest on his during his natural life, and at his death the same to go to his children. By another clause he disposed of his library, and made a provision in case his widow did not accept under the will. He appointed guardians for Jonas and Effie Jane, and nominated executors.

There was no residuary clause in the will, and the introductory clause was the statement, "I do make and publish this as my last will and testament." The will was dated January 1, 1862, and admitted to probate November 29, 1862.

In 1850 he conveyed by deed 300 acres of land to his son Aristeus.

He was married twice, and had two children by his last marriage, Jonas and Effie Jane, who were about five or six years old at the time of his death. Effie Jane died after the decease of the testator under 21 years of age, and Jonas died at the age of 26.

The decision in the court of common pleas was in favor of the claim of Arieteus Hulse to a share in the land.

BRADBURY, J.

In the court of common pleas this case was heard upon testimony as to the surrounding circumstances; there was a finding of the facts, exceptions thereto by the plaintiff in error, and a bill of exceptions taken, setting out all the testimony. But we think the question that arises is presented in such a shape that the testimony throws very little light upon it. It is a question of construction of the will, the sole question being whether Jonas Hulse, by the terms of that instrument, took a life estate or a fee-simple. The testator had five children, three by the first marriage, Aristeus, Hepzibah, James R., who were all of age at the time of making the will Aristeus and James were married and had children; Hepzibah was unmarried, and owing to her age, not likely to marry and have children. The finding of facts shows the testator was "displeased" with James and Hepzibah, and that fact is relied upon in the argument by the plaintiff in error as important. But we do not feel inclined to give it much weight. The term "displeased" is exceedingly indefinite, and while it is possible that the displeasure of the testator was deep-seated, lasting and justified by reasonable causes, on the other hand it may have been temporary, very slight and founded on trifling grounds, or mere whims. It seems that James was not a successful business man or good manager, and that Hepzibah at the time of her father's second marriage was not willing to remain with him, and went to reside with her brother.

If the testimony as to this displeasure of the testator was competent at all, which we are inclined to doubt, it seems to have had no other effect upon the making of the will, than to have induced him to limit the interest devised to James and Hepzibah to life estates, and to provide carefully for their children if they had any. For anything the court can see, the testator may have had, notwithstanding this displeasure, the most tender regard for James and Hepzibah; indeed he seems to have had such regard for all of his family, for he made careful and ample provision for all of them. It is claimed by the plaintiff in error, that the testator had a peculiar affection for Jonas and Effie Jane, who were the children of the second marriage, and at the time of the making of the will were five and six years of age. It is not at all singular that children of that age would be the object of warm affection. But we cannot perceive that this fact, if it is competent testimony at all, which is disputed by the defendant in error, throws any light upon the construction of the will.

The testimony and the finding of facts have brought before the court many things that occurred after the execution of the will. But these facts and circumstances cannot be taken into consideration in deciding the case before us.

The important question is, did the testator give to Jonas a life estate, or a fee-simple In determining this question, we must look to the language of the will, for we find little assistance in extrinsic circumstances.

(The question arises under sections 5, 6, 7 and 8, of the will of James Hulse, as printed hereinbefore, and the court proceeded to comment upon it.)

It will be observed that the testator, in his devise to Jonas, uses the words, "for and during the term of his natural life," repeatedly, as he had done in the respective devises to James R., Hepzibah, and Effie Jane In the provision for his widow he made the devise of land to her during widowhood, and the bequests of personal property he gave to her absolutely. The devises to Aristeus are to him and his heirs. He sometimes makes use of the terms life estate, and at other times fee-simple. It is clear from the will itself, that the testator understood the difference between a fee-simple and a life estate, and used these different expressions advisedly. In express terms the devise to Jonas is a life estate, and it is not easy to use language upon that point that would be more clear and explicit. In the various devises of the will he makes use of the expression, "for and during the term of his natural life," four times in reference to the devise to Jonas; once in reference to the devise to Hepzibah; three times in reference to the devise to Effie Jane, and twice in reference to the devise to James R.; in all ten times.

It would appear to the ordinary reader of this will, if not to counsel learned in the law, that the testator meant what he said when he gave these lands to Jonas "for and during the term of his natural life." But it is claimed by plaintiff in error that the clause following the devise to Jonas and Effie Jane for life, indicate an intention to give Jonas a fee-simple by implication. In support of this construction, a large number of cases, beginning with the year 1500, and continuing down to the present time, have been cited and commented on.

A large number of these cases, indeed the most of them, were devises of a general or indefinite estate, and not of a life estate, and this fact distinguishes all those cases from the present one. In the devise of a general or indefinite estate the rule is:

" If lands be devised to "A" indefinitely, with a gift over in the event of "A" dying under twenty-one, if he attains that age, he takes a fee-simple."

In some instances, to be found in the reports, a devise of a life estate in the first instance, or in some part of a will, has been held to be a fee-simple by virtue of other clauses thereof, and in accordance with plain indication of the intention of the testator. That a life estate, given in one part of a will may be enlarged into a fee, or a fee-simple, given in one part of a will, may be cut down to a life estate, by expressions in some other part of the instrument, no one will doubt. It is sufficient to say, that none of the cases cited by the plaintiff in error are like the case before us. The case of Lippett v. Hopkins et al., 1 Gallison, 454, much relied on by the plaintiff in error, was a devise of an indefinite estate.

When the will of the testator had been written and was ready for his signature, suppose his attention had been called to the fact that the lands which he devised to Jonas were a life estate, and that he had not disposed of the remainder. Suppose the writer of the will had said to him, what do you intend to do with the undisposed of remainder in case Jonas reach the age of twenty-one years and dies subsequently? Do you intend that he is to have the lands in fee-simple? What would have been his answer if this question had been put to him at that time? Judging from the scheme of the will, he would have answered, no. Jonas is not, in any event, to take a fee-simple. If he lives to the age of twenty-one years, his children, if he dies leaving children, shall take the remainder in fee. If he dies leaving no children, my other children shall take the remainder for life, and after their decease their children shall take

the remainder in fee-simple.　　Or he might have devised the remainder of these lands in part to the children of Jonas, and in part to his other children for life, with remainder to their children.　　It is easy to conceive of a dozen ways in which the remainder in these lands might have been justly and reasonably disposed of in the testator's family.

We find that the testator made most careful provision in regard to James and Hepzibah, because he doubted James' capacity for business, and whether Hepzibah would marry, or if she married, whether she would leave children.　　When we come to Jonas, we find the testator controlled by the same scheme.

Jonas was a child of seven years, and it is not possible that the testator could have the slightest idea whether he would make a good business man, or a spendthrift.　　The testator knew that this was a matter of great uncertainty in regard to any boy, and he hesitated to give Jonas so much money absolutely.　　Besides it is apparent that he doubted whether Jonas would live to attain twenty-one; or, if he lived, whether he would have children.　　The scheme of the testator induced him to withhold the fee-simple from Jonas.

As to supplying words, it is true that is done by the court in some instances; but the difficulty in the present case is to determine what words to supply.　　We are certain that we ought not to supply words giving Jonas a fee-simple, and if we supply words giving the fee to other persons, there are half a dozen ways in which such words may be supplied, all equally probable.

As long as there are other reasonable and probable ways for the testator to have disposed of this remainder, there is no implication, no necessary implication, in favor of Jonas.　　The most that can be said is, that he would probably have given these lands, after the termination of the life-estate, to the children of Jonas in fee.　　But such probability is very far from amounting to an implication.

The doctrine of implication is only intended to assist the court in finding out the intention of the testator; it is not an absolute rule of property.　　Where it does not point necessarily to the conclusion that the immediate devise of the estate is to take the fee-simple, it has no application.　　It never is applied in such a manner as to permit the first devisee to hold the life estate, and to give remainder in fee to his children or some other person.

It appears extremely uncertain in the present case, how the testator would have disposed of the remainder, if his attention had been called to it at the time; but it is clear to us that he never intended to give it to Jonas.

It is a notable circumstance, that in the devise over, upon the death of Jonas or Effie Jane under 21, he gives the land to the survivor and his other children for life only, and after their decease, to their children in fee-simple.

We have found no case like the present, and it would require a decision very much in point to justify the unusual construction claimed by the plaintiff in error.

Judgment affirmed.

Smith & Morris, and Harrison, Olds & Marsh, for plaintiff in error.

A. T. Walling, for James R. Hulse.

Page, Abernethy & Folsom, for Aristeus Hulse and Hepzibah Hulse.