Bradbury, J.
In the court of common pleas this case was heard upon testimony as to the surrounding circumstances; there was a finding of the facts, exceptions thereto by the. plaintiff in error, and a bill of exceptions taken, setting out all the testimony. But we think the question that arises is presented in such a shape that the testimony throws very little light upon it. It is a question of construction of the will, the sole question being whether Jonas Hulse, by the terms of that instrument, took a life estate or a fee-simple. The testator had five children, three by the first marriage,.Aristeus, Hepzibah James R., who where all of age at the time of making the will. Aristeus and James were married and had children; Hepzibah was unmarried, and owing to her age, not likely to marry and have children. The finding of facts shows the testator was “displeased” with James and Hepzibah, and that fact is relied upon in the argument by the plaintiff in error as important. But we do not feel inclined to give it much weight. The term “displeased” is exceedingly indefinite, and while it is possible that the displeasure of the testator was deep-seated, lasting and justified by reasonable causes, on the other hand it may have been temporary, very slight and founded on trifling grounds, or mere whims. It seems that James was not a successful business man or good manager, and that Hepzibah at the time of her father’s second marriage was not willing to remain with him, and went to reside with her brother.
If the testimony as to this displeasure of the testator was competent at all, which we are inclined to doubt, it seems to have had no other effect upon the making of the will, than to have induced him to limit the interest devised to James and Hepzibah to life estates, and to provide carefully for their children if they had any. For any thing the court can see, the testator may have had, notwithstanding this displeasure, the most tender regard for James and Hepzibah; indeed he seems to have had such regard for all of his family, for he made careful and ample provision for all of them. It is claimed by the *367 plaintiff in error, that the testator had a peculiar affection for Jonas and Effie Jane, who were the children of the second marriage, and' at the time of the making of the will were five and six years of age. It is not at all singular that children of that age would be the object of warm affection. But we cannot perceive that this fact, if it is competent testimony at all, which is disputed by the defendant in error, throws any light upon the construction of the will.
The testimony and the finding of facts have brought before the court many things that occurred after the execution of the will. But these facts and circumstances can not be taken into consideration in deciding the case before us.
The important question is, did the testator give to Jonas a life estate, or a fee-simple. In determining this question, we must look to the language of the will, for we find little assistance in extrinsic circumstances.
(The question arrises under sections 5, 6, 7 and 8 of the will of James Hulse, as printed hereinbefore, and the court proceeded to comment upon it.)
It will be observed that the testator, in his devise to Jonas, uses the words, “ for and during the term of his natural life,” repeatedly, as he had done in the respective devises to James R., Hepzibah, and Effie Jane. In the provision for his widow he made the devise of land to her during widowhood, and the bequests of the personal property he gave to her absolutely. The devises to Aristeus are to him and his heirs. He sometimes makes use of the terms life estate, and at other times fee-simple. It is clear from the will itself, that the testator understood the difference between a fee-simple and a life estate, and used these different' expressions advisedly. In express terms the devise to Jonas is a life estate, and it is not easy to use language upon that point that would be more clear and explicit. In the various devises of the will he makes use of the expression, “ for and during the term of his natural life,” four times in reference to the devise to Jonas; once in reference to the devise to Hepzibah; three times in reference to the devise to Effie Jane, and twice in reference to the devise to James R.; in all ten times.
*368 It would appear to the ordinary reader of this will, if not to counsel learned in the law, that the testator meant what he said when he gave these lands to Jonas “ for and during the term of his natural life.” But it is claimed by plaintiff in error that the clause following the devise to Jonas and Effie Jane for life, indicate an intention to give Jonas a fee-simple by implication. In support of this construction, a large number of cases, beginning with the year 1500, and continuing down to the present time, have been cited and commented on.
A large number of these cases, indeed the most of them, were devises of a general or indefinite estate, and not of a life estate, and this fact distinguishes all those cases from the present one. In the devise of a general or indefinite estate the rule is:
“ If lands be devised to “A” indefinitely, with a gift over in the event of “A” dying under twenty-one, if he attains that age, he takes a fee-simple.”
In some instances, to be found in the reports, a devise of a life estate in the first instance, or in some part of a will, has been held to be a fee-simple by virtue of other clauses thereof, and in accordance with plain indications of the intention of the testator. That a life estate, given in one part of a will may be enlarged into a fee, or a fee-simple, given in one part of a will, may be cut down to a life estate, by expressions in some other part of the instrument, no one will doubt. It is sufficient to say, that none of the cases cited by the plaintiff in error are like the case before us. The case of Lippett v. Hopkins et al., 1 Gallison, 454, much relied on by the plaintiff in error, was a devise of an indefinite estate.
When the will of the testator had been written and was ready for his signature, suppose his attention had been called to the fact that the lands which he devised to Jonas were a life estate, and that he had not disposed of the remainder. Suppose the writer of the will had said to him, what do you intend to do with the undisposed of remainder in case Jonas reach the age of twenty-one years and dies subsequently? Do you intend that he is to have the lands in fee-simple ? What would have been his answer if this question had been put to him at that time? Judging from the scheme of the will, he *369 would have answered, no. Jonas is not, in any event, to take a fee-simple. If he lives to the age of twenty-one years, his children, if he dies leaving children, shall take the remainder in fee. If he dies leaving no children, my other children shall take the remainder for life, and after their decease their children shall take the remainder in fee-simple. Or he might have devised the remainder of these lands in part to the children of Jonas, and in part to his other children for life, with remainder to their children. It is easy to conceive of a dozen ways in which the remainder in these lands might have been justly and reasonably disposed of in the testator’s family.
We find that the testator made most careful provision in regard to James and Hepzibah, because he doubted James’s capacity for business, and whether Hepzibah would marry, or if she married, whether she would \eave children. When we come to Jonas, we find the testator controlled by the same scheme.
Jonas was a child of seven years, and it is not possible that the testator could have the slightest idea whether he would make a good business man, or a spendthrift. The testator knew that this was a matter of great uncertainty in regard to any boy, and he hesitated to give Jonas so much money absolutely. Besides it is apparent that he doubted whether Jonas would live to attain twenty-one; or, if he lived, whether he would have children. The scheme of the testator induced him to withhold the fee-simple from Jonas.
As to supplying words, it is true that is done by the court in some instances; but the difficulty in the present case is to determine what words to supply. We are certain that we ought not to supply words giving Jonas a fee-simple, and if we supply words giving the fee to other persons, there are half a dozen ways in which such words may be supplied, all equally probable.
As long as there are other reasonable and probable ways for the testator to have disposed of this remainder, there is no implication, no necessary implication, in favor of Jonas. The most that can be said is, that he would probably have given these lands, after the termination of the life-estate, to the children of Jonas in fee. But such probability is very far from amounting to an implication.
Smith & Morris, and Harrison, Olds & Marsh, for plaintiff in error.
A. T. Walling, for James R. Hulse.
Page, Abernethy & Folsom, for Aristeus Hulse and Hepzibah Hulse.
The doctrine of implication is only intended to assist the court in finding out the intention of the testator; it is not an absolute rule of property. Where it does not point necessarily to the conclusion that the immediate devise of the estate is to take the fee-simple, it has no application. It never is applied in such a manner as to permit the first devisee to hold the life estate, and to give remainder in fee to his children or some other persom.
It appears extremely uncertain in the present case, how the testator would have disposed of the remainder, if his attention had been called to it at the time; but it is clear to us that he never intended to give it to Jonas.
It is a notable circumstance, that in the devise over, upon the death of Jonas or Effie Jane under 21, he gives the land to the survivor and his other.children for life only, and after their decease, to their children in fee-simple.
We have found no case like the present, and it would require a decision very much in point to justify the unusual construction claimed by the plaintiff in error.
Judgment affirmed.